# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 97-2960

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United |
| | * | States District Court for |
| v. | * | the District of Nebraska. |
| | * | |
| James Kenneth Loveless, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: January 13, 1998

Filed: March 12, 1998

_____

Before LOKEN and MURPHY, Circuit Judges, and KYLE, District Judge.[1]

KYLE, District Judge.

A jury convicted James Loveless ("Loveless") of conspiring to distribute methamphetamine, in violation of 21 U.S.C. § 846. The district court sentenced him to 360 months.[2] Loveless challenges both his conviction and his sentence. We affirm.

_____

[1]    The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation.

[2]    The Honorable Warren Urbom, Senior United States District Judge for the District of Nebraska.

## I. Background

This case involves a conspiracy to sell large quantities of methamphetamine between September 1991 and April 1993 in Nebraska. Viewed in a light most favorable to the jury's verdict, see United States v. Cunningham, 83 F.3d 218, 222 (8th Cir. 1996), the evidence reveals the following facts.

In late 1990, Loveless worked for Kevin Reber ("Reber") at a truck stop in Fontana, California. Loveless approached Reber and told him that if he knew anyone who needed methamphetamine, Loveless could supply it. Although Reber initially refused this invitation, he and another person contacted Loveless in mid-1991 in order to obtain drugs for resale. Reber received one pound of methamphetamine and one pound of cocaine from Loveless, for which he paid $15,000 per pound. Reber then sold the drugs in the Grand Island, Nebraska area.

Thereafter, Reber obtained between one to three pounds of methamphetamine from Loveless every four to six weeks. Reber bought methamphetamine from Loveless in either California or Las Vegas, Nevada, and he resold it in Salt Lake City, Utah, Denver, Colorado, and Grand Island. When the drug sales occurred in Las Vegas, Reber usually met Reber at Ceasar's Palace or another casino. In total, Reber obtained 29½ pounds of methamphetamine and one pound of cocaine from Loveless.

From mid-1991 through 1992, Reber lived at Gary Fagan's ("Fagan") home near Grand Island. Reber used Fagan's truck to transport the methamphetamine that he bought from Loveless to Nebraska. In November 1991, at Reber's request, Fagan went

to Salt Lake City to pick up methamphetamine from "Jimmy." Although Fagan could not identify Loveless at trial, FBI Special Agent Dave Burlew testified that Fagan had previously identified Loveless as "Jimmy," the person who had sold him drugs in Salt Lake City in 1991.

In September 1991, Reber provided methamphetamine to Shari Trompke for resale in the Grand Island area. Between September 1991 and July 1992, Reber gave Shari Trompke between 12 to 15 pounds of methamphetamine.

Shari Trompke accompanied Reber on some of his trips to buy methamphetamine from Loveless. In November 1991, Shari Trompke and Reber went to Bakersfield, California to buy methamphetamine from Loveless. In April 1992, they drove to Las Vegas, where Loveless sold Reber a pound of methamphetamine at Caesar's Palace. In June 1992, Reber and Shari Trompke went to Las Vegas again to buy methamphetamine from Loveless. On this trip, Loveless asked Shari Trompke if she could sell more methamphetamine.

After Shari Trompke began selling methamphetamine, she asked her brother Allen Trompke to sell drugs that she would supply to him. Beginning in the fall of 1991, Allen Trompke sold methamphetamine that Shari Trompke had given him. Shari Trompke told her brother that she received her drugs from Reber. After Shari Trompke went to prison in July 1992, Reber asked Allen Trompke if he wanted to continue selling methamphetamine. Reber then provided Allen Trompke with two pounds of methamphetamine every month or two during the end of 1992 and the beginning of 1993. Reber had also given Allen Trompke an additional two pounds of

methamphetamine while the two were in Denver in January 1992.

As part of its case in chief, the government called Darold Hinsch ("Hinsch") to testify about his drug dealings with Loveless. The district court overruled objections to Hinsch's testimony as improper character evidence under Federal Rule of Evidence 404(b) and as unduly prejudicial under Rule 403. The district court found that Hinsch's testimony was admissible, under Rule 404(b), to show proof of opportunity, intent, preparation, knowledge, identity, and absence of mistake or accident. It also found that there was not a great likelihood of unfair prejudice because of the close identity of the modus operandi. The district court gave a limiting instruction to the jury before Hinsch testified and in the Court's final instructions, advising the jury that it could not consider Hinsch's testimony as evidence of Loveless' character or his propensity to commit illegal acts.

Hinsch testified that in late 1991, Loveless asked him if he wanted to get "started up again" selling methamphetamine. Hinsch agreed, and from late 1991 through 1993, Hinsch distributed methamphetamine in the Salt Lake City area that Loveless had supplied to him. After buying ounce quantities of the drug several times, he began to purchase pound quantities of methamphetamine in 1992. Hinsch bought between one and three pounds of methamphetamine from Loveless every month or two. These transactions occurred in Las Vegas at "the Strip."

After the jury convicted Loveless of conspiring to distribute methamphetamine, the district court held an evidentiary hearing on unresolved sentencing issues. At this hearing, the government presented evidence regarding the type of methamphetamine

involved in the conspiracy.

A forensic chemist testified that the d-isomer found in d-methamphetamine was a much stronger stimulant than that found in l-methamphetamine. D-methamphetamine gives its users feelings of strength, keeps them awake for days, causes loss of appetite, and produces a very stimulating affect followed by severe depression when the effects begin to wear off. L-methamphetamine does not produce these types of stimulating effects.

Several individuals testified about the effects of the methamphetamine they used which Loveless had supplied. At trial, Reber testified that Loveless had sold him all of the methamphetamine that he, in turn, sold to Shari and Allen Trompke between 1991 and 1993. Chris Rasco testified that when she used methamphetamine that Shari Trompke had sold her, she hallucinated, her body did not function properly, she could not have conversations with people, she had problems concentrating, and she stayed awake for days at a time. Allen Trompke testified that when he used methamphetamine that Shari Trompke or Reber had supplied to him, he experienced a severe loss of appetite. Glen Schomer testified that when he used methamphetamine that Allen Trompke had sold him, he had no desire to eat or sleep, felt paranoid, and stayed awake for "weeks at a time." Shari Trompke testified that when she used the methamphetamine that Reber had provided her, she stayed awake for long stretches and had no appetite. Allen and Shari Trompke and Schomer also testified that their customers did not complain about the methamphetamine they sold them.

The forensic chemist also testified that he had tested two exhibits that the

Nebraska State Patrol had sent him, and that the exhibits contained the d-isomer of methamphetamine. The government presented evidence that these exhibits were part of the methamphetamine that Reber had bought from Loveless. The exhibits came from a sale that Allen Trompke had arranged to make to Tim Green, a confidential informant with the Nebraska State Patrol, in March 1993.

## II. Hinsch's Testimony

### A. 404(b) Evidence

Loveless argues that the district court improperly admitted Hinsch's testimony under Federal Rule of Evidence 404(b) which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Fed. R. Evid. 404(b). Rule 404(b) is a rule of inclusion; it allows a court to admit evidence of prior bad acts unless it tends to prove only a defendant's criminal disposition. United States v. Tomberlin, 130 F.3d 1318, 1320 (8th Cir. 1997).

In order for evidence of prior bad acts to be admissible, the evidence must be: (1) relevant to a material issue; (2) proved by a preponderance of the evidence; (3)

higher in probative value than in prejudicial effect; and (4) similar in kind and close in time to the crime charged. United States v. Sills, 120 F.3d 917, 920 (8th Cir. 1997). This Court reviews a district court's decision to admit evidence of a defendant's prior bad acts under an abuse of discretion standard. Tomberlin, 130 F.3d at 1320.

We conclude that the district court did not abuse its discretion in admitting Hinsch's testimony. There was a marked similarity between when, how, where, and how often Loveless supplied drugs to Reber and to Hinsch. This testimony was relevant to the material issues of Loveless' intent to, knowledge of, and opportunity to commit the crime charged, as well as being relevant to a common scheme or plan that Loveless used to supply others with drugs. See United States v. Bryson, 110 F.3d 575, 583 (8th Cir. 1997) (finding evidence that defendant had a prior conviction for distributing drugs was admissible under Rule 404(b) as relevant to show her knowledge of and intent to commit current charge of conspiracy to distribute drugs); United States v. Moore, 98 F.3d 347, 350 (8th Cir. 1996) (noting that "many of this court's prior decisions support the district court's conclusion that evidence of prior drug offenses may be relevant to the issue of a defendant's intent to commit a later drug offense"); United States v. Crouch, 46 F.3d 871, 875 (8th Cir.), cert. denied, 116 S. Ct. 193 (1995) (finding evidence that defendant committed prior illegal gun sale was admissible under Rule 404(b) as relevant both to defendant's opportunity to commit current charge and to common scheme to sell firearms).

Loveless argues that the district court erred in admitting Hinsch's testimony because he was never charged with any offense related to it. We disagree. In order for evidence of prior bad acts to be admissible under Rule 404(b), the government must

prove, by a preponderance of the evidence, that the defendant committed the acts. Sills, 120 F.3d at 920. To meet this burden, the government must introduce evidence upon which a jury could "reasonably conclude that the acts occurred and that the defendant was the actor." United States v. Robinson, 110 F.3d 1320 (8th Cir.), cert. denied, 118 S. Ct. 432 (1997) (holding that evidence of prior bad acts was admissible when police officers testified that defendant committed the act). Hinsch provided many details about the exact nature and extent of his drug transactions with Loveless. Based upon this evidence, a reasonable jury could conclude that Loveless supplied Hinsch with methamphetamine.

## B. Rule 403

Loveless argues that the district court improperly admitted Hinsch's testimony because its prejudicial effect substantially outweighed its probative value. Hinsch's testimony, Loveless contends, was extremely prejudicial because it had such a close identity with the crime charged, and it had limited probative value in light of the substantial evidence implicating Loveless in the charged conspiracy.

Federal Rule of Evidence 403 permits a district court to exclude relevant evidence if its probative value is substantially outweighed by its prejudicial effect. Fed. R. Evid. 403. "The rule is concerned only with unfair prejudice, that is, an undue tendency to suggest decision on an improper basis." United States v. Warfield, 97 F.3d 1014, 1027 (8th Cir. 1996), cert. denied, 117 S. Ct. (1997) (citation omitted).

This Court gives broad deference to a district court's determination under Rule 403. "We do not reweigh the value of the material against its potential for harm to the

defendant, but determine only whether the district judge abused its discretion in admitting it." United States v. Holmes, 822 F.2d 802, 806 (8th Cir. 1987) (citation omitted).

We find that the district court did not abuse its discretion in admitting Hinsch's testimony.[3] As previously noted, this testimony was relevant to several material issues in the case. We disagree with Loveless' contention that it was unfairly prejudicial because of the similarity between the manner in which Loveless supplied drugs to both Hinsch and Reber. See United States v. McCarthy, 97 F.3d 1562, 1573 (8th Cir. 1996), cert. denied, 117 S. Ct. 1011 (1997) (holding evidence that defendant had previously smuggled marijuana was not unfairly prejudicial under Rule 403 and was properly admitted in case where defendant was charged with conspiring to distribute marijuana); United States v. House, 939 F.2d 659, 663 (8th Cir. 1991) (holding

---

[3] We reject as frivolous Loveless' argument that "the record does not reflect a careful consideration by the district court of the probative value and potential for unfair prejudice of Hinsch's testimony after the government's offer of proof." After listening to the offer of proof, the district court stated:

> With respect to 403, there seems to me to be such close identity of the modus operandi that there is not great likelihood of unfair prejudice. Prejudice, yes, but I can't see that it would be unfair or confusion of the issues or misleading the jury or undue delay or waste of time or needless presentation of cumulative evidence. So I don't believe that the evidence should be excluded for any of those reasons. It seems to me to have probative value not substantially outweighed by other considerations.

(Tr. at 419:8-19.)

evidence that defendant had sold crack on a daily basis during month before his arrest was not unfairly prejudicial under Rule 403 and was properly admitted in case where defendant was charged with possessing cocaine with the intent to distribute). Moreover, this Court has "been reluctant to find that the evidence was unfairly prejudicial when the district court gave an appropriate limiting instruction, instructing the jury not to use the evidence as proof of the acts charged in the indictment." McCarthy, 97 F.3d at 1573. The district court gave an appropriate limiting instruction before Hinsch testified and again in its final instructions. Under these circumstances, it was within the discretion of the district court to allow Hinsch's testimony.

## III. D-Methamphetamine

Loveless argues that the district court erroneously determined that the methamphetamine he conspired to distribute was d-methamphetamine, and not l-methamphetamine.

Under the applicable sentencing guidelines, a sentence for d-methamphetamine is greater than a sentence for l-methamphetamine by a factor of 25. See U.S.S.G. § 2D1.1, n.10. A district court must make a factual finding as to whether the methamphetamine was d- or l-methamphetamine. United States v. Maza, 93 F.3d 1390,1401 (8th Cir. 1996), cert. denied, 117 S. Ct. 1008 (1997). The government bears the burden of proving by a preponderance of the evidence that the methamphetamine was d-methamphetamine, and it may do so using either direct or circumstantial evidence. Id.; United States v. Bogusz, 43 F.3d 82, 91-92 (3rd Cir. 1994). We review the district court's finding for clear error. Maza, 93 F.3d at 1401.

The district court did not commit clear error when it determined that the drug involved was d-methamphetamine. The government presented evidence that Reber sold the methamphetamine he had received from Loveless to Allen and Shari Trompke. Allen Trompke then resold some of this methamphetamine to Sean Hansen, who resold it to Schomer. These individuals all testified that when they used this methamphetamine, they experienced stimulating effects that only d-methamphetamine would produce, such as sleeplessness for days at a time and severe loss of appetite. Moreover, these individuals also testified that they never received any complaints from their customers about the methamphetamine they sold them. This is ample circumstantial evidence upon which the district court could conclude that Loveless conspired to distribute d-methamphetamine. See Maza, 93 F.3d at 1041 (holding that government proved defendant distributed d-methamphetamine where drug dealers, who had bought methamphetamine from defendant, received no complaints from their customers about the drugs they sold them).

## III. Loveless' Role in the Offense

Loveless contends that the district court erred when it enhanced his base offense level by three points for being a manager or supervisor of a criminal conspiracy, pursuant to U.S.S.G. § 3B1.1.

U.S.S.G. § 3B1.1 provides for a three-point increase in a defendant's base offense level if he or she "was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1. Factors the district court should consider in determining

whether an upward adjustment is appropriate "include the nature of the defendant's role in the offense, the recruitment of accomplices, and the degree of participation in planning or organizing the offense." United States v. Flores, 73 F.3d 826, 835 (8th Cir.), cert. denied, 116 S. Ct. 2568 (1996) (citation omitted). This Court reviews a sentencing court's factual determination of a participant's role in the offense for clear error. United States v. Padilla-Pena, 129 F.3d 457, 469 (8th Cir. 1997).

Loveless argues that the district court erred in determining that he was a manager or supervisor of the conspiracy because the evidence at trial showed that he only sold drugs to Reber. Reber, Loveless contends, was the supervisor of the conspiracy. We reject this contention. The guidelines require "that [the defendant] supervised 'one or more other participants' to trigger this enhancement." United States v. Pena, 67 F.3d 153, 157 (8th Cir. 1995) (quoting U.S.S.G. § 3B1.1, comment. n.2) (emphasis added).

The evidence at trial indicated that Loveless recruited Reber to distribute methamphetamine and that he attempted to recruit Shari Trompke to distribute larger quantities of methamphetamine. See United States v. Tran, 122 F.3d 670, 673 (8th Cir. 1997) (finding that defendant's recruitment of others to participate in the conspiracy demonstrated that he was a manager or supervisor). Loveless also fronted drugs to Reber, thus assuming a financial risk for some of the drug sales. See Pena, 67 F.3d at 156 (finding that defendant was a manager or supervisor of a drug conspiracy, in part, because he "retain[ed] the financial risk of distribution by fronting or consigning the drugs"). More importantly, however, the evidence at trial demonstrated that Loveless exercised a great deal of control over Reber and the sales Loveless made to him;

Loveless decided where the sales would take place, the price for the methamphetamine, and the method of payment. A defendant's "determination of the price to be charged for narcotics is further evidence of his managerial or supervisory role." United States v. Pierce, 907 F.2d 56, 57 (8th Cir. 1990).

Considering the record as a whole, we find that the district court's determination that Loveless was a manager or supervisor under U.S.S.G. §3B1.1 was not clearly erroneous.

## IV. Loveless' Criminal History

Loveless argues that the district court improperly enhanced his criminal history by three points for his California state conviction for possession of a controlled substance on May 7, 1993. This conviction, Loveless contends, is part of the instant offense, and as such, it should not be considered in calculating his criminal history.

In determining a defendant's criminal history category, the district court should assess three points "for each prior sentence of imprisonment exceeding one year." U.S.S.G. § 4A1.1(a). "Although conduct that is part of the current offense should be counted as relevant conduct rather than as a prior sentence, conduct is not part of the instant offense when it is a 'severable distinct offense.'" United States v. Copeland, 45 F.3d 254, 256 (8th Cir. 1995) (quoting United States v. Blumberg, 961 F.2d 878, 792 (8th Cir. 1992)). In making this determination, the district court should consider "temporal and geographical proximity, common victims, and a common criminal plan." Id. This Court reviews the sentencing court's determination for clear error. United

States v. Strange, 102 F.3d 356, 361 (8th Cir. 1996).

We find no clear error in the district court's determination that Loveless' California state conviction for possessing methamphetamine and marijuana with the intent to distribute was a "prior sentence of imprisonment exceeding one year." U.S.S.G. § 4A1.1(a). This conviction occurred after Loveless' last contact with Reber, and there is no evidence indicating that Loveless intended to distribute these drugs to Reber or anyone in Nebraska. The government neither offered any evidence related to this conviction to prove the Nebraska conspiracy nor referenced this conviction in its case in chief. Under these circumstances, the district court properly enhanced Loveless' criminal history for his California state conviction.

Affirmed.

A true copy.

Attest:

Clerk, U.S. Court of Appeals, Eighth Circuit.