# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3397

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * District of South Dakota. |
| Esteban Ruiz-Chavez, | * |
| | * |
| Appellant. | * |

_____

Submitted: June 18, 2010
Filed: July 16, 2010

_____

Before WOLLMAN, EBEL,[1] and COLLOTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Esteban Ruiz-Chavez (Ruiz) was convicted of conspiracy to possess with intent to distribute methamphetamine and possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Ruiz appeals his

_____

[1]The Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by designation.

conviction, arguing that the district court[2] erred by admitting testimony regarding a 2006 arrest and that this error warrants a new trial. We affirm.

I.

In July 2007, Trooper Zachary Bader of the South Dakota Highway Patrol stopped a van on Interstate 90 near Chamberlain, South Dakota, because it was traveling at an unsafe distance behind another vehicle. Venancio Gomez was driving the van, although it had been rented by Ruiz, who was lying on the floor of the van. Also riding in the van were Daniela Vargas (Daniela); Uriel Vargas (Uriel); and Stephanie Bowers. Trooper Bader became suspicious when the five occupants of the vehicle gave contradictory stories regarding their travel plans. Trooper Bader then walked his trained drug detection dog around the exterior of the vehicle. The dog alerted to the presence of drugs. A subsequent search of the vehicle revealed a duffel bag containing ten bags of what appeared to be crystal methamphetamine.

Trooper Bader arrested all five individuals and impounded the vehicle. Subsequent laboratory analysis established that the drug mixture in the bags weighed 4.417 kilograms, of which 1.663 kilograms were actual methamphetamine. Ruiz, Gomez, Uriel, and Bowers were indicted on the conspiracy and possession charges described above. The indictment alleged that the conspiracy began in June 2006 and continued until July 2007.

Before trial, Ruiz moved to preclude testimony about his August 2006 arrest. The government sought to introduce testimony from the arresting officer describing the circumstances of the arrest, including that Ruiz had been arrested for possession of a stolen firearm; that approximately $2,100 had been seized from Ruiz and forfeited as proceeds from drug sales; and that Tou Fang, an associate of Ruiz who was

---

[2]The Honorable John B. Jones, United States District Judge for the District of South Dakota.

standing nearby, was found in possession of methamphetamine. Ruiz argued that the testimony was irrelevant and unfairly prejudicial. The district court denied the motion and admitted the testimony.

At trial, Trooper Bader testified as to the circumstances of the July 2007 traffic stop and arrest. Agent Gary Harvison of the Drug Enforcement Administration testified as to the drug quantities involved and the general investigation. Officer Erik Johnston of the Columbia Heights, Minnesota, police department testified as to the circumstances surrounding Ruiz's August 2006 arrest. Officer Johnston indicated that he responded to a noise complaint on August 5, 2006, at the apartment building where Ruiz and Daniela were living. At the scene, Officer Johnston encountered Ruiz, Gomez, and Fang. When Officer Johnston pulled into the parking lot, Fang entered Ruiz's black Ford Expedition, retrieved an unknown object and threw it into nearby bushes. Officer Johnston located the object, which turned out to be a baseball cap containing packets of methamphetamine. A subsequent search of Ruiz's vehicle revealed a stolen handgun. Officer Johnston also found $2,100 in cash on Ruiz. Ruiz was arrested for possession of a stolen handgun, and the cash was forfeited to the police department as proceeds from drug sales.

Bowers and Daniela testified that Ruiz distributed methamphetamine from his apartment and that he regularly paid drivers to transport drugs from California to Minneapolis. Bowers and Daniela provided similar explanations of the series of the events that led up to the traffic stop in South Dakota: In Ruiz's employ, Gomez, Bowers, and Uriel were driving Ruiz's car back from a drug run to California, when it left the highway and rolled over near Salt Lake City, Utah. Gomez and Uriel stashed the drugs they were transporting alongside the highway and the three went to a local hospital for treatment of minor injuries. Upon notification of the accident, Ruiz rented a car in Minneapolis to drive to Utah to pick up his couriers and his drugs. Daniela joined him because she was concerned about her brother, Uriel. Ruiz also rented a car in Salt Lake City for Gomez, Bowers, and Uriel so that they could return

to the accident scene and retrieve the hidden drugs, which they did. Ruiz picked them and the drugs up and all five proceeded towards Minneapolis by way of South Dakota, where they were stopped as described above.

A jury convicted Ruiz on both counts. The jury found that the amount of methamphetamine involved was equal to or greater than 500 grams on each count. Based upon a total offense level of 44 and a criminal history category I, the guideline sentence was imprisonment for life. The district court, however, varied downward from the guideline and sentenced Ruiz to 180 months' imprisonment.

## II.

We review for an abuse of discretion the district court's evidentiary rulings and denial of a motion for a new trial. Ferguson v. United States, 484 F.3d 1068, 1074 (8th Cir. 2007).

From the government's perspective, Officer Johnston's testimony about the August 2006 arrest was relevant to prove a conspiracy involving Ruiz to distribute methamphetamine in Minneapolis beginning in 2006. Specifically, the government claims that the circumstances surrounding the 2006 arrest were relevant to show Ruiz's knowledge and intent, the type of controlled substance involved, the purpose of the conspiracy, the identity of some of the conspirators, and the conspiracy's locale of distribution. Ruiz argues that the circumstances of the prior arrest were probative neither of the charged conspiracy nor the possession with intent to distribute charge. He contends that there was no logical connection between the August 2006 arrest and the July 2007 arrest and that it was introduced solely to impugn his character. Citing several provisions of the Federal Rules of Evidence, Ruiz argues that it was error to admit Officer Johnston's testimony.

First, Ruiz argues that the circumstances of the 2006 arrest were irrelevant to the charged offenses and thus inadmissible under Federal Rules of Evidence 401 and

402. We disagree. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "All relevant evidence is admissible . . . . Evidence which is not relevant is not admissible." Fed. R. Evid. 402.

The circumstances of the arrest were probative of Ruiz's involvement in a drug distribution conspiracy beginning in 2006. At the time of the arrest, Ruiz possessed substantial cash proceeds from distributing drugs and illegally possessed a firearm in close proximity to drugs, as is often the case in drug conspiracies. See United States v. Marquez, 605 F.3d 604, 610 (8th Cir. 2010) ("Firearms may be probative of an ongoing drug conspiracy, especially when they are found in close proximity to drugs."). Indeed, the firearm in question was found in Ruiz's vehicle, in which were the packets of methamphetamine that Fang removed and threw into nearby bushes when police approached. Gomez, a charged co-conspirator, was also at the scene. These circumstances were relevant to the government's accusation that Ruiz had been distributing methamphetamine since at least June 2006 in the Minneapolis area, as charged in count one of the indictment. The arrest occurred during the charged conspiracy, and the circumstances of the arrest were relevant to prove the existence of the conspiracy.

Second, Ruiz argues that even if the evidence was relevant, it was inadmissible under Federal Rule of Evidence 403, because its probative value was substantially outweighed by the danger of unfair prejudice. Ruiz alleges that the only purpose for which the evidence could have been introduced was to inflame the jury and portray him in a negative light. We disagree. Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." As stated above, the circumstances surrounding the 2006 arrest were probative to an

ongoing drug distribution conspiracy. Ruiz has not shown that the testimony was particularly likely to confuse, distract, or inflame the jury. Thus, the danger of unfair prejudice did not substantially outweigh the probative value of the evidence and Rule 403 did not bar its admission.

Last, Ruiz argues that Federal Rule of Evidence 404(b) precluded admission of the testimony concerning the 2006 arrest. Under Rule 404(b), the government may introduce evidence of prior bad acts for limited purposes. United States v. Stenger, 605 F.3d 492, 499 (8th Cir. 2010). The evidence must be relevant to a material issue, proved by a preponderance of the evidence, more probative than prejudicial, and similar in kind and close in time to the charged offense. Id. The government, however, may not introduce prior bad acts to suggest the defendant's propensity to commit the charged offense—the so-called "forbidden inference." United States v. Carroll, 207 F.3d 465, 468-69 (8th Cir. 2000); see United States v. Epstein, 426 F.3d 431, 439 (1st Cir. 2005).

Rule 404(b), however, applies to the admission of wrongful-act evidence that is extrinsic to the charged offense; the rule does not prevent admission of other wrongful conduct that is intrinsic to the charged offense. United States v. Johnson, 535 F.3d 892, 896 (8th Cir. 2008); Epstein, 426 F.3d at 439. "Evidence of other wrongful conduct is considered intrinsic when it is offered for the purpose of providing the context in which the charged crime occurred. Such evidence is admitted because the other crime evidence completes the story or provides a total picture of the charged crime." United States v. Johnson, 463 F.3d 803, 808 (8th Cir. 2006) (internal citation and punctuation omitted).

Rule 404(b) did not apply to Officer Johnston's testimony because the conduct in question was intrinsic to the charged drug conspiracy. The conduct occurred during the conspiracy, it provided context for the conspiracy, and it completed the story of the charged offense. Ruiz's defense was that he was simply in the wrong place at the

wrong time and that the government had not proved that he was involved with a drug distribution ring. The circumstances surrounding the 2006 arrest indicated that the opposite was true. Accordingly, Rule 404(b) did not apply to Officer Johnston's testimony. The district court did not abuse its discretion in ruling as it did.

## III.

The judgment is affirmed.

_____