# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1158

_____

United States of America,

*Plaintiff - Appellee*,

v.

Luis Arciniega Jasso, also known as Hector Ortiz,

*Defendant - Appellant*.

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: September 21, 2012
Filed: December 10, 2012

_____

Before RILEY, Chief Judge, SMITH and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

A jury convicted Luis Arciniega Jasso of conspiracy to distribute methamphetamine and possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841 and 846. The district court[1] sentenced him to 188

_____

[1]The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas.

months' imprisonment on each charge, with the sentences to run concurrently. Jasso appeals the convictions, challenging two of the district court's evidentiary rulings.

A grand jury charged Jasso and twelve others with conspiring with each other and other persons to distribute methamphetamine from in or before April 2009 through on or about October 5, 2010. The indictment also charged Jasso with possessing methamphetamine with intent to distribute on April 24, 2009. The substantive count was based on a seizure of drugs from a vehicle in which Jasso was a passenger.

At trial, the government presented testimony of John Watkins, who cooperated in the federal investigation of Jasso after police arrested Watkins for possession of methamphetamine. Watkins testified that Jasso gave him money and drugs as compensation for driving others who delivered methamphetamine. Prior to trial, the government moved to exclude evidence of two felony convictions that Watkins sustained in the 1970s. Federal Rule of Evidence 609(a) places a limit on the admissibility of convictions where more than ten years have elapsed since the later of the witness's conviction or release from confinement from it.

Jasso urged that despite the time elapsed between the 1970s and the trial in 2010, evidence of Watkins's old convictions should be admitted, because "they become relevant in an oblique way." His theory was premised on the fact that during Watkins's cooperation in the investigation of Jasso and others, Watkins was charged in state court with failing to register as a sex offender and for unlawful possession of a firearm as a felon. Jasso argued that the convictions from the 1970s made Watkins eligible for punishment as a habitual offender under Arkansas law, such that a prison term would be mandatory. Nonetheless, he maintained, the State declined to pursue that enhanced punishment, supposedly in consideration for Watkins's work on drug cases for the drug task force. Jasso sought to present evidence of the prior convictions and the alleged favorable treatment by the State in order to argue that

Watkins was biased in favor of the federal prosecution in Jasso's case. The district court granted the government's motion to exclude the evidence without a detailed explanation.

In proffered testimony outside the presence of the jury, Watkins admitted that he sustained the two convictions in the 1970s for assault and theft. Watkins testified, however, that he was unaware that his prior convictions made him subject to prosecution as a habitual offender in Arkansas or that a habitual offender is ineligible for a sentence of probation. He acknowledged a desire to get out of jail after he was arrested on the state charges, but said that he did not contact the United States Attorney's Office for assistance and did not ask his attorney to do so.

Jasso argues that the district court's refusal to allow his proposed cross-examination about the prior convictions and favorable treatment by state prosecutors violated his rights under the Confrontation Clause. "[E]xposure of a witness' motivation in testifying," of course, "is a proper and important function of the constitutionally protected right of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). Where there are facts that would support a reasonable inference of bias that relates to a witness's credibility, the defendant should be permitted to make an effective inquiry into that bias. *See id*. at 319. But "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam).

Two aspects of this case lead us to conclude that the district court's ruling did not run afoul of the Sixth Amendment. First, the connection between Jasso's proposed cross-examination of Watkins and an inference of bias was highly attenuated. Watkins denied knowledge that he was subject to punishment as a habitual offender or that he received a benefit from the State's charging decisions. He also testified that he sought no assistance from the United States Attorney's Office

in connection with his prosecution by state authorities. Jasso proffered no evidence to contradict these assertions. To infer that the resolution of Watkins's charges in state court resulted in bias toward the federal prosecutors in Jasso's case, a jury would have to disbelieve the witness's denial that he understood the workings of the Arkansas habitual offender provision *and* conclude that there was reason for the witness to favor the federal prosecution of Jasso because of leniency afforded by state prosecutors in Watkins's case. Credibility is a matter for the jury, so the jury could disbelieve Watkins. Even so, there was no affirmative evidence that potential punishment as a habitual offender was part of Watkins's plea negotiations with the State or, more importantly, that there was any cooperation between state and federal authorities on how to handle the Watkins prosecution in state court. Without such evidence, it would be a tenuous inference that Watkins desired to please federal prosecutors as a result of the charging decisions made by state prosecutors in an unrelated case.

Second, Jasso had other opportunities to develop evidence of Watkins's potential bias. Watkins admitted on cross-examination that he "cut a deal with the drug task force" that they would not charge him for possession of methamphetamine if he made purchases of drugs from Jasso. In Watkins's own words, "I rolled over to save my butt." Watkins admitted that he continued to use methamphetamine even while he was assisting the drug task force in an investigation of Jasso, but that he was not charged with any drug offense. He also acknowledged that he was paid by the drug task force in exchange for assistance in the investigation. This evidence gave the jury ample reason to infer that Watkins may have been biased in favor of law enforcement and the prosecution of Jasso.

A district court may impose reasonable limits on cross-examination based on concerns about prejudice or confusion of the issues. *Delaware v. Van Arsdall*, 475 U.S. 673, 678-79 (1986). Given the attenuation between evidence of Watkins's forty-year-old convictions and any potential bias, it was reasonable for the district court to

conclude that admission of the evidence would be unfairly prejudicial or confusing. Aside from Jasso's "oblique" theory of relevance, admissibility of a prior conviction is governed by Federal Rule of Evidence 609, under which "convictions over 10 years old will be admitted very rarely and only in exceptional circumstances." Fed. R. Evid. 609 advisory committee's note on 1974 amendments. Watkins already was impeached with evidence of his more recent felony convictions, so there was no exceptional need for the use of older convictions to question his credibility. *See United States v. Singer*, 660 F.2d 1295, 1301 (8th Cir. 1981). The cross-examination that was allowed, moreover, gave Jasso other means "to obtain the effect that the excluded examination would have allegedly established." *United States v. Warfield*, 97 F.3d 1014, 1024 (8th Cir. 1996). We thus conclude that the district court's ruling did not violate Jasso's rights under the Confrontation Clause.

The second evidentiary dispute concerns testimony by an FBI agent concerning Jasso's brother, Bexabet Jasso. The agent testified that she conducted an investigation in San Diego in 2004 that involved wiretaps on telephones used by Juan Jasso Arciniega. She explained that evidence in the investigation showed that Juan, Bexabet, and the appellant here, Luis, were brothers. The government also elicited testimony from the agent that Bexabet and Juan were indicted in California in September 2004, and that Bexabet was arrested in Kansas City in February 2010.

Jasso asserts that the evidence of Bexabet's indictment and arrest was irrelevant, and that it served only to implicate him through "guilt by association." The government argued at trial that the evidence was relevant, because "this is a family organization," and that Bexabet's arrest in 2010 explained why his sister took over running the drug trafficking business at that time. Another witness, Osvaldo Duran Sandoval, testified that he received methamphetamine from Bexabet for redistribution, that Bexabet at some point was "caught," and that Sandoval then in February 2010 began to receive methamphetamine from Jorge Medina, who was married to Lisbeth Jasso. The government asserts that Lisbeth is Jasso's sister,

although the evidence appears to establish only that "she might be a relative" of Bexabet Jasso.  T. Tr. 145.

Although the probative value of Bexabet's arrest in February 2010 appears minimal, it was not an abuse of discretion for the district court to allow it.  Jasso was arrested in April 2009, but the indictment charged that he was part of a conspiracy that extended through October 2010.  The disputed evidence was relevant to explain how the conspiracy evolved during the charged time frame, as Jasso was arrested in 2009 and then Bexabet was arrested and replaced by Medina as a supplier of methamphetamine in February 2010.  The FBI agent's testimony about Bexabet's arrest, moreover, was essentially cumulative of Sandoval's statement—received without objection—that Bexabet was "caught" in February 2010.  Any risk of unfair prejudice from the agent's testimony was therefore minimal.

The judgment of the district court is affirmed.

_____