# United States Court of Appeals
## For the Eighth Circuit

---

No. 14-3532

---

United States of America

*Plaintiff - Appellee*

v.

Lawrence Edward Williams

*Defendant - Appellant*

---

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

---

Submitted: June 11, 2015
Filed: August 7, 2015

---

Before GRUENDER, BEAM, and BENTON, Circuit Judges.

---

GRUENDER, Circuit Judge.

Lawrence Williams was indicted for possessing a firearm as a felon. *See* 18 U.S.C. § 922(g)(1). A jury found Williams guilty, and the district court[1] sentenced him to 66 months' imprisonment. Williams appeals his conviction. We affirm.

---

[1]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri.

# I.

On January 26, 2013, Officer Jennifer Hendricks of the St. Louis Metropolitan Police Department was driving her patrol car when its license plate recognition ("LPR") system gave an alert about a nearby car. The LPR system scans the license plates of cars that are within range of cameras mounted on the patrol car and can generate an alert if a scanned car is connected to a wanted person.

The alert showed Officer Hendricks that a man named Otis Hicks was associated with a nearby car and was wanted by the St. Louis County Police Department, a department that neighbors Hendricks's, for first-degree domestic assault. The alert also said that Hicks may be armed and dangerous. The LPR alert did not explain how or when Hicks was associated with the car.

After pulling the car over, Officer Hendricks approached the driver's side and saw two men inside. She asked the driver for his license, which identified him as Otis Hicks. Officer Hendricks then waited for a second police officer to arrive. Upon arrival, Officer David Christensen asked the passenger, Williams, to get out of the car and present identification. According to Officer Christensen, Williams patted his waistband two times while getting out of the car and Williams's hands were shaking uncontrollably as he retrieved his identification. Officer Christensen handcuffed Williams and conducted a pat-down search for weapons. Officer Christensen felt what he recognized to be a firearm and removed a handgun from Williams's waistband. After finding the handgun, Officer Christensen found a bag containing "a dark rock-like substance" in Williams's pocket that was later identified as heroin.

A federal grand jury indicted Lawrence Williams for one count of possessing a firearm as a felon. Before trial, Williams moved to suppress the handgun and

heroin.  A magistrate judge[2] held an evidentiary hearing and heard testimony from Officers Hendricks and Christensen.  The magistrate judge recommended the denial of Williams's motions.  The district court adopted the magistrate judge's relevant proposed factual findings and rulings.

Pursuant to Federal Rule of Evidence 404(b), the Government notified Williams that it would introduce his prior firearm-possession convictions at trial. Williams submitted two motions in limine that sought to exclude his 2002 conviction for possessing a firearm as a felon, his 1995 conviction for unlawful possession of a concealable firearm and unlawful use of a firearm, and his earlier conviction of first-degree robbery.  Williams also moved to exclude the heroin.  The district court denied Williams's motions to exclude the heroin and the 2002 and 1995 convictions. However, the court excluded the earlier robbery conviction because of, among other reasons, "the age, when it was completed, the similarity of the offenses, and the fact that we will already have two others that will be introduced into evidence."

At trial, Williams's counsel attempted to cross-examine Officer Hendricks about her motivation for testifying that Williams had actual possession of the handgun.  After Williams's counsel asked Officer Hendricks if she had been frustrated with prosecutors' past decisions regarding whether to bring firearm charges, the Government objected, and the following colloquy took place at sidebar:

> Counsel:  Judge, it's my good faith belief that the police officers in the city of St. Louis sometimes decide to charge somebody with a gun that they found in the car even though the gun was not found on the person, and that the person that they decide to charge is the person in the car that has the worst record.

---

[2]The Honorable Terry I. Adelman, United States Magistrate Judge for the Eastern District of Missouri, now retired.

Court:      Have you got some evidence of this that you are going to present here?

Counsel:    No, I want to ask her.

Court:      Do you have some evidence of that fact that you are prepared to present to me?

Counsel:    No.

After the Government argued that this had "nothing to do with the facts of this case," the court asked Williams's counsel about the foundation for this line of questions:

Court:      I am just going to tell you, [Counsel], absent some evidence to support some good faith belief that that occurs or occurred here, I will not permit you to go down that road.

Counsel:    Well, may I tell the Court that my good faith belief is based on talking to a retired police officer about this case?

Court:      No. If you want to bring that police officer in to testify here, then I will take his proffer and we can go from there.

Counsel:    All right.

Court:      But I will not permit you on the record that we have here to suggest that with respect to this witness.

After Officer Hendricks finished testifying, Officer Christensen took the stand. Before cross-examining Officer Christensen, Williams's counsel asked the court if he would be barred from pursuing the same line of questions:

Counsel: I assume [the Government] still wants to object and that you would make the same ruling, that I'm not allowed at this time to go into questions about the relationship between the police department and the warrant office at the [prosecutor's office].

Court: Not for the purpose and based upon the record that you have made today, correct.

After the witnesses testified, the court gave limiting instructions to the jury on how it should consider the evidence of Williams's 2002 and 1995 convictions. The jury found Williams guilty.

## II.

## A.

Williams first argues that Officer Hendricks lacked reasonable suspicion to stop the car. *See Delaware v. Prouse*, 440 U.S. 648, 663 (1979); *Brendlin v. California*, 551 U.S. 249, 255-57 (2007). According to Williams, because Officer Hendricks lacked reasonable suspicion to stop the car, the handgun and heroin were fruits of an illegal stop and should have been suppressed.[3] *See generally Wong Sun v. United States*, 371 U.S. 471 (1963).

We review the district court's factual findings for clear error and its legal conclusions *de novo*. *United States v. Farnell*, 701 F.3d 256, 260 (8th Cir. 2012). "The Fourth Amendment permits an investigative stop of a vehicle if officers have a reasonable suspicion the vehicle or its occupants are involved in criminal activity."

---

[3]Williams's Fourth Amendment argument only challenges Officer Hendricks's initial stop of the car. Because Williams does not challenge the propriety of the subsequent searches, we need not address those issues.

*United States v. Bell*, 480 F.3d 860, 863 (8th Cir. 2007). If police have reasonable suspicion, they "may briefly stop an individual and make reasonable inquiries aimed at confirming or dispelling the suspicion." *United States v. Hughes*, 517 F.3d 1013, 1016 (8th Cir. 2008). "Reasonable suspicion must be supported by more than a mere hunch, but the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying the preponderance of the evidence standard." *United States v. Roberts*, 787 F.3d 1204, 1209 (8th Cir. 2015) (internal quotation marks and citation omitted). "We consider the totality of the circumstances when determining whether an officer has a particularized and objective basis to suspect wrongdoing." *United States v. Robinson*, 670 F.3d 874, 876 (8th Cir. 2012).

Officer Hendricks relied upon the notice from the LPR system that: (1) Hicks was associated with a nearby car, (2) Hicks was wanted by the St. Louis County Police Department for first-degree domestic assault, and (3) Hicks may have been armed and dangerous. Williams nonetheless argues that Officer Hendricks did not have reasonable suspicion to conduct the traffic stop because a "police officer who receives an alert from the LPR system has no way of knowing the extent of the person's relationship to the vehicle." Williams and the Government seem to agree that there are no reported federal decisions that have specifically dealt with the use of an LPR system in the Fourth Amendment context. However, as we have held, "if a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification, to pose questions to the person, or to detain the person briefly while attempting to obtain further information." *Farnell*, 701 F.3d at 262 (internal alteration omitted) (quoting *United States v. Smith*, 648 F.3d 654, 659 (8th Cir. 2011)). "Police officers may rely upon notice from another police department that a person or vehicle is wanted in connection with the investigation of a felony 'when making a *Terry* stop, even if the

notice omits the specific articulable facts supporting reasonable suspicion.'" *Smith*, 648 F.3d at 659 (internal alteration omitted) (quoting *United States v. Jacobsen*, 391 F.3d 904, 906 (8th Cir. 2004)).

We fail to see how the use of the LPR system makes any difference in this case. Williams does not cite any precedent holding that the mechanism through which an officer receives notice from another department matters for Fourth Amendment purposes. Indeed, the LPR system merely automates what could otherwise be accomplished by checking the license-plate number against a "hot sheet" of numbers, inputting a given number into a patrol car's computer, or "calling in" the number to the police station. Thus, we conclude that Officer Hendricks was entitled to "rely upon notice from another police department," she obtained by using a more automated process: the LPR system. *See id.* at 656-60 (upholding a police officer's reliance on a wanted notice he discovered by performing a search on a license-plate number).

Williams argues further that Officer Hendricks's stop violated the Fourth Amendment "because she could not tell who was driving the car until after she stopped it." Williams asserts, without citation, that Officer Hendricks must "have [had] some idea at least that there [was] a black male driving the car" before making the traffic stop. Officer Hendricks testified that she was unable to see who was inside the car until after she stopped it. Common sense dictates that police officers will often be unable to confirm the race or gender of a driver before initiating a traffic stop. Accordingly, we fail to see how Officer Hendricks's decision to briefly stop the car and check the driver's identification was an unreasonable seizure in violation of the Fourth Amendment merely because she initially could not identify the driver's race or gender. *See Farnell*, 701 F.3d at 262.

Williams concedes that Hicks was "perhaps associated with the car" but nonetheless argues that the stop violated the Fourth Amendment because Officer Hendricks "had no information of the time frame of when Hicks had been associated with the car." But our precedent makes clear that "officers may rely upon notice from another police department that a person or vehicle is wanted in connection with the investigation of a felony 'when making a *Terry* stop, even if the notice omits the specific articulable facts supporting reasonable suspicion." *Smith*, 648 F.3d at 659 (internal alteration omitted) (quoting *United States v. Jacobsen*, 391 F.3d at 906). Accordingly, this argument is without merit.[4]

**B.**

Williams next argues that the district court abused its discretion when it admitted, under Rule 404(b), evidence that Williams had twice been convicted of illegal firearm possession. "We review the district court's admission of evidence of past crimes under Federal Rule of Evidence 404(b) for abuse of discretion, and we will not reverse unless the evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." *United States v. Bassett*, 762 F.3d 681, 687 (8th Cir. 2014) (internal alteration

---

[4]Williams's opening brief notes that Hicks "was not the registered owner of the car" and his reply brief suggests that "the police only had information 'associating' [Hicks] with driving a particular car once upon a time." To the extent that this could be construed as attempting to argue that the St. Louis County Police Department had an insufficient factual basis to link Hicks to the car initially, we will not consider it as it was not properly developed by Williams. Williams's opening brief does not develop this argument and does not provide any case law in support. *See* Fed. R. App. P. 28(a)(8); *Christensen v. Titan Distribution, Inc.*, 481 F.3d 1085, 1098 n.7 (8th Cir. 2007). And while Williams's reply brief arguably comes closer to making this argument, as a general rule we do not entertain arguments that are first raised in a reply brief. *See Bearden v. Lemon*, 475 F.3d 926, 930 (8th Cir. 2007).

omitted) (quoting *United States v. Banks*, 706 F.3d 901, 906 (8th Cir. 2013)). Rule 404(b) is "one of inclusion, such that evidence offered for permissible purposes is presumed admissible absent a contrary determination." *United States v. Wilson*, 619 F.3d 787, 791 (8th Cir. 2010) (quoting *United States v. Littlewind*, 595 F.3d 876, 881 (8th Cir. 2010)).

We employ a four-part test to determine whether a district court abused its discretion in admitting 404(b) evidence. *United States v. Robinson*, 639 F.3d 489, 494 (8th Cir. 2011). Evidence is properly admitted under Rule 404(b) if "(1) it is relevant to a material issue; (2) it is similar in kind and not overly remote in time to the crime charged; (3) it is supported by sufficient evidence; and (4) its potential prejudice does not substantially outweigh its probative value." *Id.* (quoting *United States v. Frazier*, 280 F.3d 835, 847 (8th Cir. 2002)). "The requirement to balance probative value and prejudice is found in [Federal Rule of Evidence] 403," *United States v. Cook*, 454 F.3d 938, 941 (8th Cir. 2006), which provides in relevant part that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by [the] danger of . . . unfair prejudice." Williams argues that the evidence of his former firearm-possession convictions was improperly admitted because (1) the evidence was irrelevant, (2) the evidence was not similar in kind and was overly remote in time, and (3) the potential prejudice outweighed the probative value. We disagree and address each in turn.

As a general rule, "[e]vidence that a defendant possessed a firearm on a previous occasion is relevant to show knowledge and intent." *United States v. Walker*, 470 F.3d 1271, 1274 (8th Cir. 2006). Williams first contends that the evidence of his prior firearm-possession convictions was not relevant as "[k]nowledge and intent were not issues" in the case because the Government's theory involved only actual possession. Williams cites *United States v. Caldwell* in support of his argument. 760 F.3d 267 (3d Cir. 2014). *Caldwell* explained that

because "the Government proceeded solely on a theory of actual possession, we hold that [the defendant's] knowledge was not at issue in the case." *Id.* at 279. While Williams's argument may be supported by *Caldwell*, it is foreclosed by our precedent. "Knowing possession of a firearm is an element of 18 U.S.C. § 922(g)(1), and [Williams] placed his knowledge of the firearm's presence at the scene on his person at issue by pleading not guilty to the crime and requiring the government to prove his guilt beyond a reasonable doubt." *See United States v. Oaks*, 606 F.3d 530, 539 (8th Cir. 2010). And we have held that the defendant places his knowledge and intent at issue by pleading not guilty even when the prosecution proceeds solely on an actual possession theory. *United States v. Halk*, 634 F.3d 482, 485-87 (8th Cir. 2011) (holding that previous firearm possessions were relevant to defendant's knowledge and intent to possess a firearm where police saw defendant holding and discarding a gun).

Williams next argues that the evidence of his prior firearm-possession convictions fails the second part of our 404(b) test because the crimes were not "similar in kind" and were "overly remote in time to the crime charged." *See Robinson*, 639 F.3d at 494. On the issue of similarity, our test merely requires that the prior acts are "sufficiently similar to support an inference of criminal intent." *Walker*, 470 F.3d at 1275 (quoting *United States v. Strong*, 415 F.3d 902, 905 (8th Cir. 2005)). As such, we have no trouble concluding that the district court did not abuse its discretion when it concluded that Williams's prior illegal possessions of firearms were sufficiently similar to his instant illegal possession of a firearm. *See id.*

As to temporal remoteness, Williams notes that the firearm-possession offenses each occurred more than 10 years before he was arrested for the instant offense. We determine if a crime is too remote in time to be admissible under Rule 404(b) by applying a reasonableness standard that evaluates the facts and circumstances of each

case. *Id*. "[T]here is no specific number of years beyond which prior bad acts are no longer relevant to the issue of intent." *Id.* (quoting *United States v. Shoffner*, 71 F.3d 1429, 1432 (8th Cir. 1995)). Here, the district court permitted the Government to introduce evidence of Williams's 2002 and 1995 firearm-possession convictions but held that his earlier robbery conviction was inadmissible. Williams's two firearm-possession offenses were committed in February 2001 and April 1994, respectively, and he was arrested for the instant crime on January 26, 2013. Thus, the two prior offenses were more than 11 and 18 years old. We have upheld the admission of a crime committed more than 20 years before the offense at issue. *United States v. Williams*, 308 F.3d 833, 835-37 (8th Cir. 2002); *see also Halk*, 634 F.3d at 484, 487-88 (upholding the admission of a crime that took place approximately 19 years before the instant § 922(g)(1) offense). Moreover, because Williams was incarcerated for such a significant amount of time—approximately 12 of the 18 years since his 1995 conviction—"the total number of years separating the prior offense[s] and the charged offense did not 'significantly diminish the probativeness of the evidence.'" *Walker*, 470 F.3d at 1275 (quoting *United States v. Adams*, 401 F.3d 886, 894 (8th Cir. 2005)). Accordingly, we discern no abuse of discretion in the district court's 404(b) remoteness analysis. *See id.*

Williams's final argument regarding the admissibility of his prior firearm-possession convictions is that the probative value is substantially outweighed by the prejudicial effect. "Though all Rule 404(b) evidence is inherently prejudicial, the test under Rule 403 is whether its probative value is *substantially* outweighed by the danger of *unfair* prejudice." *Cook*, 454 F.3d at 941. "We give great deference to a district court's application of the Rule 403 balancing test." *United States v. Lupino*, 301 F.3d 642, 646 (8th Cir. 2002). Here, the district court carefully balanced the probative value against any unfair prejudicial effect and excluded evidence of Williams's earlier robbery conviction in part to limit any potential unfair prejudice. The district court also gave a limiting instruction to mitigate the risk of any unfair

prejudice. The court told the jury to consider the previous convictions "to help . . . decide intent, knowledge, and absence of mistake," but instructed them that while "the defendant may have committed similar acts in the past, this is not evidence that he committed such an act in this case." We have "been reluctant to find that the evidence was unfairly prejudicial when the district court gave an appropriate limiting instruction." *United States v. Kent*, 531 F.3d 642, 651 (8th Cir. 2008) (quoting *United States v. Loveless*, 139 F.3d 587, 593 (8th Cir. 1998)). In light of the district court's careful analysis and appropriate limiting instruction, we cannot conclude that the court abused its discretion by admitting the evidence of Williams's previous firearm-possession convictions. *See id.*

## C.

Williams's third argument is that the district court violated his Sixth Amendment right to confrontation by prohibiting his counsel from cross-examining Officers Hendricks and Christensen about their alleged motivation to testify falsely that Williams had a handgun on his person. "We review evidentiary rulings regarding the scope of a cross examination for abuse of discretion, but where the Confrontation Clause is implicated, we consider the matter *de novo*." *United States v. Kenyon*, 481 F.3d 1054, 1063 (8th Cir. 2007) (internal citation omitted). The Confrontation Clause "guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *United States v. Sigillito*, 759 F.3d 913, 938 (8th Cir. 2014) (quoting *United States v. Jasso*, 701 F.3d 314, 316 (8th Cir. 2012)), *cert. denied*, 574 U.S. ---, 135 S. Ct. 1019 (2015). Accordingly, "a district court may impose reasonable limits on cross-examination based on concerns about prejudice or confusion of the issues." *Id.* (internal alteration omitted) (quoting *Jasso*, 701 F.3d at 317). A district court has wide latitude to impose such reasonable limits on cross-examination. *Id.* We will not reverse a court's decision to limit cross-examination "unless there has been a clear

abuse of discretion and a showing of prejudice to the defendant." *United States v. Petters*, 663 F.3d 375, 382 (8th Cir. 2011).

Williams's assertion that "the district court completely foreclosed cross-examination about the motive, interest, and bias of the police officers" grossly misconstrues the district court's ruling. After defense counsel attempted to imply that police officers sometimes decide to charge a felon with actual firearm possession based on his record, the court explained that, without a foundation to support a good-faith belief that this had occurred, the defense could not continue with those questions. And after prohibiting this line of questions on the record as it then stood, the court offered the defense the opportunity to present a witness on the matter. Rather than accept the invitation to lay a proper foundation, Williams's counsel chose not to pursue the matter further.

The district court's implicit concern was that this line of questions would "waft an unwarranted innuendo into the jury box" that there was some evidence that the officers were lying. *United States v. Tucker*, 533 F.3d 711, 714 (8th Cir. 2008) (quoting *United States v. Beeks*, 224 F.3d 741, 746 (8th Cir. 2000)); *see also United States v. Sanabria*, 645 F.3d 505, 514 (1st Cir. 2011) ("[A] district court may properly limit cross-examination on inherently speculative theories of bias, where the defendant is unable to lay a proper evidentiary foundation." (internal quotation marks omitted) (quoting *United States v. Martinez-Vives*, 475 F.3d 48, 53-54 (1st Cir. 2007)). Williams had no good-faith basis to believe that the officers had planted a handgun in this case and offered only a purported conversation with "a retired police officer" as a basis for the belief that such a practice occurred generally. We conclude that the district court was well within its wide latitude of discretion when it required Williams to first lay a proper evidentiary foundation before implying that Officers Hendricks and Christensen had planted a handgun on Williams and perjured themselves. *See United States v. Tolliver*, 665 F.2d 1005, 1008 (11th Cir. 1982) (per

curiam). The district court's ruling was not an abuse of discretion and was not inconsistent with the Confrontation Clause. *See Kenyon*, 481 F.3d at 1064.

## D.

Finally, Williams argues that the district court abused its discretion by admitting the heroin into evidence. *See United States v. Brooks*, 715 F.3d 1069, 1076 (8th Cir. 2013). Williams argues that the heroin was extrinsic to his possession of the handgun as a felon and thus that the district court should have conducted a Rule 404(b) analysis. Rule 404(b) "applies to the admission of wrongful-act evidence that is *extrinsic* to the charged offense; the rule does not prevent admission of other wrongful conduct that is *intrinsic* to the charged offense." *Id.* (quoting *United States v. Ruiz-Chavez*, 612 F.3d 983, 988 (8th Cir. 2010)). Wrongful-conduct evidence is intrinsic "when it is offered for the purpose of providing the context in which the charged crime occurred. Such evidence is admitted because the other crime evidence completes the story or provides a total picture of the charged crime." *Id.* (quoting *Ruiz-Chavez*, 612 F.3d at 988).

The district court explained that the heroin was "part of the events here and is important for an understanding of why the defendant was arrested. And I believe . . . it is also relevant to the issue of knowledge and intent to possess the firearm." We agree. According to Officer Christensen, the heroin was discovered in the same sequence of events as the handgun. And the heroin's presence explains why Williams may have been carrying the handgun. *See United States v. Vincent*, 316 F. App'x 275, 278 (4th Cir. 2009) (per curiam) (explaining that "the drug evidence, though uncharged, was intrinsic to the firearm conviction as the drugs and firearm were found together during the same criminal episode").

Williams also argues that the district court abused its discretion by not excluding the heroin because its probative value was substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403; *Brooks*, 715 F.3d at 1076. The heroin was probative of Williams's knowledge and intent to possess the handgun. *See United States v. White*, 356 F.3d 865, 870 (8th Cir. 2004) (holding that "drug-related evidence was related to [the defendant's] firearm possession" because of the connection between drug dealing and firearms). And we see nothing in the record that suggests this probativeness was substantially outweighed by unfair prejudice. Accordingly, the district court did not abuse its discretion when it determined that the heroin was admissible. *See Brooks*, 715 F.3d at 1076.

## III.

We affirm.

BEAM, Circuit Judge, concurring in the judgment.

_____