# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3189

_____

United States of America,

*Plaintiff - Appellee,*

v.

Terrence Matthew Brown,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: April 17, 2015
Filed: June 8, 2015

_____

Before MURPHY, COLLOTON, and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

A jury convicted Terrence Matthew Brown of five counts of wire fraud and one count of conspiracy to commit wire fraud. On appeal, Brown argues that the district court[1] violated his Sixth Amendment right to confront witnesses against him by

_____

[1]The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

limiting his cross-examination of a prosecution witness and excluding the testimony of a defense witness. We conclude that there was no error in the district court's rulings, and we therefore affirm.

## I.

In 2000, while in prison, Brown had an idea for a software company, which he incorporated as "The Softwear Group." In 2004, after completing his term of imprisonment, Brown asked Garen Armstrong, a friend he met in prison, to invest in his company. At the time, Armstrong was involved in the residential mortgage business, and he invested in The Softwear Group. As president of the company, Brown earned a salary of $5,000 per month.

When The Softwear Group began experiencing financial difficulties, Brown saw the purchase of homes as a way to raise money for the company. With Armstrong's help, Brown purchased a total of five homes between July and October 2006. Brown received kickbacks from the home purchases by inflating the purchase price on his loan applications. Armstrong prepared the loan applications while Brown provided the necessary information and signed them. At each closing, Brown signed documents in which he acknowledged that any false statement could result in criminal prosecution, fine, or imprisonment. He represented to the lenders that he would occupy each of the homes and that he earned $15,000 per month. After the purchases, Brown received kickbacks totaling $224,500.

When the scheme was exposed, a grand jury charged Brown with wire fraud and conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349. At trial, the prosecution presented testimony from Stacy Parton, the loan closer for three of Brown's five loans. She testified that she reviewed every document with Brown and explained what each document meant.

On cross examination, defense counsel questioned Parton about statements she allegedly made to a private investigator, Mark Reeder, during a telephone interview before trial. Parton testified that she did not recall telling Reeder: (1) that, after the first closing, Brown "should have known what he was signing and what to do"; (2) that she "explained to people what they were to sign, where to sign, and had them sign"; (3) that "it was not up to [her] to determine what was legal or illegal"; (4) and that "there was nothing wrong with buying and selling more than one house that you weren't living in because that's what everybody else was doing."

During the defense case, Brown called Reeder to testify about his interview with Parton. Reeder testified that Parton told him: (1) her job as closer was to have the parties sign documents, and it was not her job to go through the documents and explain forms to people; and (2) it was not her job to determine whether or not what Brown was doing was illegal.

The prosecution objected to Reeder's testimony as hearsay. Defense counsel argued that it was not hearsay because Parton's prior statements to Reeder were admissible to impeach her allegedly inconsistent testimony at trial. The district court ruled that Parton's testimony that she could not recall making certain statements to Reeder was not inconsistent with her alleged prior statements as recounted by Reeder. The court thus ruled that Reeder's testimony could not be used to impeach Parton, and it instructed the jury to disregard Reeder's testimony.

Armstrong agreed to cooperate with the government in Brown's prosecution, and he also testified at trial. On cross-examination, defense counsel asked Armstrong about his cooperation with the government and his plea agreement. Counsel questioned Armstrong about the possible sentence he could face under the plea agreement, but Armstrong stated that he did not know, as he and his lawyer had not yet received discovery materials. Defense counsel then asked Armstrong about the United States Sentencing Guidelines and Armstrong's potential criminal history

score, eliciting Armstrong's testimony that his "criminal history" was going to be "quite high" and "could be a three or a four." In the middle of a follow-up question that began "So you're looking at substantial—," the government objected. Defense counsel replied, "I'll let it go. That's fine."

At a sidebar immediately thereafter, defense counsel said that he was "just trying to see if [Armstrong] knows what he's looking at." The district court noted that Armstrong already testified that he did not know, and the court expressed concern that the examination was "going far afield." The court told defense counsel, "I don't know where you want to go with this," and sustained the government's objection "as to relevance." Defense counsel then moved to a different line of questioning.

The jury returned a verdict of guilty on all counts, and the district court sentenced Brown to 87 months in prison. Brown appeals his conviction, arguing that the district court violated his Sixth Amendment right of confrontation by limiting his cross-examination of Armstrong and by excluding Reeder's testimony regarding his interview with Parton.

II.

The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." "The primary purpose of this right is to guarantee the opportunity for effective cross-examination, particularly with respect to a witness's potential bias." *United States v. Walley*, 567 F.3d 354, 358 (8th Cir. 2009).

A criminal defendant's rights under the Confrontation Clause, however, are not without limit. Courts "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns

-4-

about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam).

Brown first contends that the district court violated his rights under the Sixth Amendment when it prevented him from cross-examining Armstrong. He alleges that the court did not allow him to ask Armstrong about his understanding of the potential sentence that Armstrong faced as a result of his fraud activities. Brown also claims that the court prevented him from asking Armstrong if his decision to testify was influenced by a desire to please the government and thereby receive a reduced sentence.

We do not agree that the court limited Brown's cross-examination in this way. The government objected while defense counsel was questioning Armstrong about his potential criminal history score under the sentencing guidelines. The precise question that drew the objection was not even completed, so we do not have a record of what specific information Brown sought to elicit. And in any event, defense counsel withdrew the question before the court even ruled on the government's objection. In response to defense counsel's subsequent statement that he was "just trying to see if [Armstrong] knows what he's looking at," the district court correctly observed that Armstrong already had said that he did not know; the question had been asked and answered.

Brown did not then attempt to ask Armstrong whether he testified in order to please the government and receive a reduced sentence. The court did not preclude that question. Defense counsel already had elicited, moreover, that Armstrong in a prior case had received a reduction in sentence as a result of his cooperation with the

government. Armstrong also acknowledged that he intended to plead guilty in his pending case, and that he could be responsible for a loss amount in the millions and could have a "quite high" criminal history score. Insofar as the colloquy at the sidebar limited the cross-examination at all, the court simply thought that further inquiry about Armstrong's understanding of the sentencing guideline calculations was not relevant. This limitation was not an abuse of discretion under the rules of evidence or a constitutional violation, although Rule 403 was likely a more appropriate ground for limiting the cross-examination than relevance under Rule 402. *See, e.g.*, *United States v. Wilkens*, 742 F.3d 354, 359 (8th Cir. 2014).

Brown also argues that the district court erred by excluding Reeder's testimony about his interview with Parton. Brown urges that Reeder's testimony was admissible under Federal Rule of Evidence 613(b) as extrinsic evidence of prior inconsistent statements by Parton. We conclude that there was no error, because Brown did not lay an adequate foundation for the admission of prior inconsistent statements.

When defense counsel examined Parton, she testified that she did not recall making several statements to Reeder. If she had *denied* making the statements, then Brown could have cited the denial as a basis to admit extrinsic evidence of the statements. *E.g.*, *United States v. Yarrington*, 634 F.3d 440, 448 (8th Cir. 2011). And "[a] claimed inability to recall, when disbelieved by the trial judge, may be viewed as inconsistent with previous statements when the witness does not deny that the previous statements were in fact made." *United States v. Rogers*, 549 F.2d 490, 496 (8th Cir. 1976). But "[t]he trial judge must be accorded reasonable discretion in determining whether a claim of faulty memory is inconsistent with statements previously given." *Id*.

The district court ruled that Reeder's testimony was not proper impeachment of Parton, because Parton testified that she did not remember making the suggested statements to Reeder. "Where a witness in good faith asserts that she cannot

remember the relevant events, the trial court may, in its discretion, exclude the allegedly prior inconsistent statement." *United States v. Shillingstad*, 632 F.3d 1031, 1037 (8th Cir. 2011). Particularly given that defense counsel made no effort to refresh Parton's memory regarding her interview with Reeder, the district court reasonably determined that her lack of recollection was genuine. It was not an abuse of discretion to exclude Reeder's testimony under Rule 613(b) for lack of foundation, and the exclusion on that basis raises no constitutional concern. *See United States v. Hale*, 685 F.3d 522, 539 (5th Cir. 2012).

The judgment of the district court is affirmed.

_____