# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3239

_____

United States of America

*Plaintiff - Appellee*

v.

Travis Dane Ybarra, also known as HoodNutt

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: June 9, 2017
Filed: June 27, 2017
[Unpublished]

_____

Before LOKEN, MURPHY, and MELLOY, Circuit Judges.

_____

PER CURIAM.

Travis Ybarra was involved in the distribution of methamphetamine in the Kansas City, Missouri area. He was charged along with sixteen codefendants with conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846, and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i), (h). A jury convicted him of both counts, and he was sentenced

to 360 months imprisonment. Ybarra appeals, arguing that the district court[1] should have declared a mistrial after a government witness offered unsolicited testimony that Ybarra had killed someone and that his Sixth Amendment right to confront witnesses was violated by the denial of his request to recall a government witness for impeachment. We affirm.

I.

In July 2011 officers in the Kansas City, Missouri area began investigating a methamphetamine distribution ring which they came to believe was led by Ybarra. After months of investigation, Ybarra and sixteen codefendants were charged in a twelve count superseding indictment. Ybarra was only charged with the first two counts—conspiracy to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846, and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i), (h).

Ybarra was tried before a jury. Officers involved in the investigation testified for the government about controlled drug purchases they made from coconspirators and their discovery of identical money counters in the homes of three codefendants, including Ybarra. The government also introduced recordings of telephone calls between Ybarra and other coconspirators in which he was apparently discussing the distribution of drugs.

Five of Ybarra's codefendants who had pled guilty testified for the government and implicated him in the conspiracy. One of these codefendants, Kevin Weiss, testified that he had known Ybarra as "HoodNutt." The prosecutor asked Weiss how he had learned that the name HoodNutt referred to Ybarra, and Weiss replied that

---

[1]The Honorable David Gregory Kays, Chief Judge, United States District Court for the Western District of Missouri.

another codefendant had told him that "HoodNutt was the guy that killed his cousin." The court interrupted the testimony immediately after this comment. At a bench conference Ybarra's counsel moved for a mistrial, and the judge and prosecutor both mistakenly stated that Weiss had said that "he" (not "HoodNutt") was the man who killed the codefendant's cousin. The court denied the motion for a mistrial and issued a curative instruction, telling the jury that "the last response from this witness is hereby stricken" and "not to consider that in any way during your deliberations." A short while later, the court held another bench conference with the lawyers and acknowledged that Weiss had identified HoodNutt as the person who killed someone, and then denied defense counsel's renewed motion for a mistrial.

Another codefendant, Samantha Edmunds, also testified for the government about the drug conspiracy. On direct examination, she said that she had first met Ybarra when her codefendant and boyfriend at the time, Damon Schultz, had purchased a few ounces of methamphetamine from him. She also testified that Ybarra was Schultz's only supplier of methamphetamine during the relevant time period. Both of these statements were inconsistent with statements she had made during a previous interview with law enforcement officers.

On cross examination, defense counsel impeached her with the inconsistencies, and engaged in the following colloquy:

Q: You were asked a lot of the same questions [at the prior interview] you were asked here today; is that correct?
A: Yes.
Q: The answers were quite a bit different back then; weren't they?
A: Yes.

Defense counsel then attempted to get Edmunds to admit that she had previously told officers that Schultz had two methamphetamine suppliers, Taco and Beto, and that

she had not previously identified Ybarra as Schultz's methamphetamine supplier. Edmunds did not admit to making those statements, however, and instead maintained that she had always said that Ybarra supplied Schultz with methamphetamine. At the end of Edmunds' testimony, defense counsel reserved the right to recall her.

When the government rested, defense counsel asked to recall Edmunds to impeach her further with the video recording of her prior interview with law enforcement officers. The district court asked what counsel hoped to accomplish with the witness, and counsel replied that he wanted the jury to know that Edmunds had previously said that Schultz got his methamphetamine from Taco and Beto, not from Ybarra. Counsel admitted that he had already impeached Edmunds to some degree, but argued that the video would be the best evidence of impeachment. The district court denied the request to recall Edmunds, reasoning that counsel had already had the opportunity to impeach her with a summary of the prior interview. The defense then rested without calling any witnesses.

The jury convicted Ybarra of both charged offenses. The district court sentenced him to 360 months on the distribution count and 240 months on the money laundering count, to be served concurrently. Ybarra appeals.

II.

Ybarra argues that the district court erred by denying his motion for a mistrial after Weiss offered unsolicited testimony that another codefendant told him that "HoodNutt was the guy that killed his cousin." We review the denial of a motion for "a mistrial for an abuse of discretion." United States v. Coleman, 349 F.3d 1077, 1087 (8th Cir. 2003).

A jury's exposure "to improper testimony ordinarily is cured by measures less drastic than a mistrial, such as an instruction to the jury to disregard the testimony."

United States v. Sherman, 440 F.3d 982, 987 (8th Cir. 2006). A curative instruction will be insufficient, however, if "the verdict was substantially swayed" by the improper testimony. Coleman, 349 F.3d at 1087 (quoting United States v. Muza, 788 F.2d 1309, 1312 (8th Cir. 1986)). To determine whether improper testimony affected the verdict, we compare the prejudice caused by the testimony with the strength of the evidence of the defendant's guilt. Id. If "the evidence of guilt is substantial, we may find that the allegedly improper testimony was harmless." United States v. Brandon, 521 F.3d 1019, 1026 (8th Cir. 2008).

We conclude that the district court's curative instruction sufficiently cured any prejudice caused by Weiss' improper testimony. The improper comment "was fleeting and immediately interrupted by the" court. See Sherman, 440 F.3d at 988. Although the comment did cast Ybarra in a violent light when he was charged with a nonviolent offense, that alone would not mandate a mistrial. We have concluded in other cases with nonviolent drug charges that any prejudice caused by similar improper testimony was adequately cured by a curative instruction. See, e.g., Brandon, 521 F.3d at 1026–27; Sherman, 440 F.3d at 987—88.

The court also "acted promptly to strike the allegedly improper testimony and to instruct the jury to disregard it." See Sherman, 440 F.3d at 988. The court's curative instruction told the jury to disregard the previous statement; it did not repeat that statement or indicate to the jury that the judge was confused by whether Weiss had used a personal pronoun or the name HoodNutt. Furthermore, any residual prejudicial effect would have been harmless because there was substantial evidence of Ybarra's guilt, including "recordings of [Ybarra] negotiating drug transactions with co-conspirators on the telephone, and testimony of multiple co-conspirators implicating [Ybarra] in the drug trafficking conspiracy." See id. Given the fleeting nature of Weiss' improper statement, the curative measure taken by the court, and the substantial evidence of Ybarra's guilt, we conclude that the district court did not abuse its discretion by denying Ybarra's motion for a mistrial after Weiss provided

improper testimony.

## III.

Ybarra also argues that the district violated his right to confront witnesses under the Sixth Amendment by denying his request to recall Edmunds to impeach her with the video of her prior interview with officers. Although we ordinarily review an evidentiary ruling which limits the scope of cross examination for abuse of discretion, our review is de novo when the claim implicates the Sixth Amendment. United States v. Williams, 796 F.3d 951, 960 (8th Cir. 2015).

The Confrontation Clause of the Sixth Amendment provides a defendant with the right to "effective cross-examination of witnesses against him." United States v. Warfield, 97 F.3d 1014, 1024 (8th Cir. 1996) (quoting United States v. Willis, 997 F.2d 407, 415 (8th Cir. 1993)). This "right to examine witnesses . . . is not without limitation, however." Id. Under the Confrontation Clause, "[d]istrict courts 'retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things . . . interrogation that is repetitive or only marginally relevant.'" Id. (quoting United States v. Juvenile NB, 59 F.3d 771, 778 (8th Cir. 1995)). Confrontation Clause violations are reviewed for harmless error. United States v. Jones, 728 F.3d 763, 766 (8th Cir. 2013); see also Chapman v. California, 386 U.S. 18, 23–24 (1967) (setting forth harmless error standard for reviewing constitutional errors).

We need not determine whether the district court violated Ybarra's Sixth Amendment right to confront witnesses because we conclude that even if there were such an error, it was harmless beyond a reasonable doubt. When "assessing the harmlessness of an erroneous limitation on cross-examination, we consider the importance of the witness's testimony to the entire case, whether the testimony was cumulative, whether corroborating or contradicting evidence existed, the degree of

cross examination actually permitted, and the overall strength of the government's case." Harrington v. Iowa, 109 F.3d 1275, 1279 (8th Cir. 1997). Here, defense counsel wanted further to impeach Edmunds' trial testimony that Ybarra had supplied Schultz with methamphetamine. Edmunds' testimony on that point was cumulative, however, because a different government witness, Ashley Ford, testified that he went with Schultz to purchase methamphetamine from Ybarra on over thirty different occasions. Moreover, even if Ybarra were correct that the video would have been the best evidence of impeachment, Edmunds had already been impeached on cross examination. See Jones, 728 F.3d at 767 (concluding that error was harmless because additional evidence about the witness' credibility would have been cumulative). She had testified about the sentence reduction she received for cooperating with the government and admitted on cross examination that her trial testimony differed in some respects from her prior statements to officers. We therefore conclude that the district court did not commit a reversible constitutional error by denying Ybarra's motion to recall Edmunds to impeach her further with a previously recorded statement.

IV.

Accordingly, the judgment of the district court is affirmed.

_____