# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-4303

_____

United States of America

*Plaintiff - Appellee*

v.

Cahlan A. Clay

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: November 17, 2017
Filed: March 5, 2018
[Published]

_____

Before COLLOTON and GRUENDER, Circuit Judges, and READE,[1] District
Judge.

_____

PER CURIAM.

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern
District of Iowa, sitting by designation.

A jury convicted Cahlan Clay of one count of unlawful possession of a firearm as a previously convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Clay appeals his conviction, arguing that the district court[2] violated his Fifth and Sixth Amendment right to present testimony in his defense and his Sixth Amendment right to confront witnesses against him. We affirm.

I.

On September 23, 2012, Detective Anderson and Officer Thomas of the Kansas City, Missouri Police Department were working off-duty at a wedding reception in Kansas City. Around 2:45 a.m., Detective Anderson heard a "pop," which he believed was a gunshot. This was followed by one or two more "pops," which he knew were gunshots. The sounds originated from a large crowd gathered in a nearby parking lot. The crowd scattered, and Detective Anderson and Officer Thomas moved toward the parking lot.

Detective Anderson testified that, upon entering the parking lot, he saw Clay holding a handgun. Detective Anderson saw the muzzle flash of Clay's handgun as Clay fired at him. Clay fled after Detective Anderson returned fire. Detective Anderson maintained focus on Clay and pursued him. While in pursuit, Detective Anderson fired multiple times at Clay. One of his shots hit Clay, who fell to the ground. As Detective Anderson approached, Clay surrendered his handgun by dropping it and said, "I'm done." The entire incident lasted approximately thirty seconds to a minute.

The State of Missouri charged Clay with four felonies arising out of the incident. On April 21, 2015, Clay's state court trial began in Jackson County,

---

[2]The Honorable Roseann A. Ketchmark, United States District Court for the Western District of Missouri.

Missouri. Detective Anderson and Officer Thomas testified at the state trial. The trial ended in a mistrial after the jury was unable to reach a unanimous verdict.

On July 28, 2015, a federal grand jury charged Clay with one count of unlawful possession of a firearm as a previously convicted felon. On March 22, 2016, Clay's first federal trial began. During the trial, Detective Anderson testified that he heard one "pop" followed by two more "pops" before he approached the parking lot and encountered Clay. During cross-examination, Officer Thomas testified that he never saw the face of the person holding the gun in the parking lot, but saw that the shooter was wearing a white t-shirt. Officer Thomas stated that his identification was based on Clay's clothing.

During closing argument, defense counsel argued that the officers' testimony was contradicted by the trial evidence in two ways. First, Detective Anderson testified that he had heard three gunshots prior to approaching the parking lot, where Clay fired a fourth shot. This testimony was contradicted by the fact that only three shell casings matching the handgun were recovered. Second, Officer Thomas testified that the shooter was wearing a white t-shirt, but the evidence established that Clay was wearing a black t-shirt over a white t-shirt. Detective Anderson and Officer Thomas observed closing arguments from the gallery. On March 24, 2016, the district court declared a mistrial after the jury was unable to reach a unanimous verdict.

On May 9, 2016, Clay's second federal trial began. Both officers testified at the second trial. Detective Anderson's testimony was similar to his testimony at the first trial, except he testified that he heard two shots, rather than three, prior to entering the parking lot. Specifically, Detective Anderson testified that he heard a "pop" that sounded like a gunshot, followed by a second "pop" that he was certain was a gunshot. Detective Anderson also testified, however, that he was not counting shots and that he was unsure of the total number of shots fired. Officer Thomas's

testimony was also substantially similar to the first trial, except that, on cross-examination, he described the shooter as wearing a black t-shirt over a white t-shirt.

Based on the officers' testimony, defense counsel sought to elicit testimony, through either cross-examination or defense witnesses, that the officers had been present for closing arguments at the first trial. Defense counsel contended that this evidence supported the argument that the officers changed their testimony to conform to the physical evidence after seeing how defense counsel attacked their testimony in the first trial. The district court found that Detective Anderson and Officer Thomas had "committed [their] statements on the record multiple times" before the current trial, including statements given after the incident, during depositions and trial in state court and at the first federal trial. The district court determined that defense counsel had ample opportunity to impeach the officers without referencing the first federal trial and concluded that the proffered evidence was "more confusing than helpful." Defense counsel was allowed to impeach the officers with their prior testimony by referring to the first federal trial as a "hearing."

During cross-examination, defense counsel also sought to question Detective Anderson regarding the consequences he could face for an unjustified shooting. The prosecution objected that the testimony was speculative. Defense counsel argued that this evidence established that Detective Anderson had a motive to say that Clay had a gun, even if he did not, to avoid punishment. The district court sustained the objection, finding that the record was sufficient to allow defense counsel to "argue the inference[]" but that such testimony would "distract[] from the purpose of the charge and this trial."

During closing arguments in the second federal trial, defense counsel argued that Clay was unarmed and that Detective Anderson lied about Clay being armed to avoid punishment. Defense counsel also argued that the officers' testimony was

inconsistent with their prior sworn statements, which indicated that they had changed their testimony to align it with the physical evidence.

The jury returned a verdict of guilty, and the district court sentenced Clay to 120 months' imprisonment. Clay raises two issues on appeal. First, Clay argues that the district court violated his right to present a defense under the Fifth and Sixth Amendments by excluding testimony that the officers were present for closing arguments during the first federal trial. Second, Clay argues that the district court violated his Sixth Amendment right to confront witnesses against him by limiting defense counsel's cross-examination of Detective Anderson.

II.

"We review claims of constitutional error de novo." *United States v. Hawkins*, 796 F.3d 843, 863 (8th Cir. 2015) (quoting *United States v. Sweeney*, 611 F.3d 459, 473 (8th Cir. 2010)).

"'[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense,' which includes the right to present testimony of witnesses that is material and favorable to their defense and complies with the rules of evidence." *United States v. Holmes*, 413 F.3d 770, 774 (8th Cir. 2005) (alteration in original) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). The right to present testimony is "grounded in the [F]ifth and [S]ixth [A]mendments." *United States v. Turning Bear*, 357 F.3d 730, 733 (8th Cir. 2004). Merely showing that a district court denied a defendant's request to present particular testimony, however, does not establish error. *See id.* Rather, while the arbitrary exclusion of admissible testimony may violate a defendant's rights, "the Constitution leaves trial judges 'wide latitude' to exclude 'marginally relevant' or 'repetitive' evidence" without running afoul of a defendant's right to present a defense. *United States v. Herbst*, 668 F.3d 580, 585 (8th Cir. 2012) (quoting *Crane*, 476 U.S. at 689).

Clay argues that the district court violated his right to present a complete defense by excluding testimony that Detective Anderson and Officer Thomas were present for closing arguments during the first federal trial. Clay contends that this evidence would have bolstered his defense that Detective Anderson lied about seeing him with a gun. Clay further argues that this evidence corroborated his defense by giving the jury grounds to infer that both officers tailored their testimony to the physical evidence.

We find that the district court committed no error by excluding the requested testimony. The district court found that the proffered testimony was of little probative value and was outweighed by the risk of confusion of the issues. As did the district court, we note the considerable amount of committed testimony in this case that could be, and was, used to impeach the officers and call into question the reliability of their testimony. The district court also found that defense counsel could have used cross-examination to show that the officers viewed the physical evidence subsequent to the night of the incident and had a chance to tailor their testimony, without mentioning the prior trial. Although the defense was forbidden to inquire whether the officers were present for closing arguments at a prior trial, nothing prevented defense counsel from asking other questions to establish that the officers learned after their prior testimony about evidence that contradicted their original accounts. Clay thus had an adequate opportunity to lay the foundation for an argument that the officers tailored their testimony to match other evidence. In light of the above, the district court's conclusion that the probative value of the testimony was outweighed by the risk of confusion was not arbitrary, unreasonable, or disproportionate.

Additionally, we do not agree with Clay that *Portuondo v. Agard*, 529 U.S. 61 (2000) is instructive to this case. In *Portuondo*, the Supreme Court held that a prosecutor did not violate the defendant's rights when, during closing argument, she "call[ed] the jury's attention to the fact that the defendant had the opportunity to hear

all other witnesses testify and to tailor his testimony accordingly." *Id.* at 63. This decision did not address the admissibility of testimony nor the standard used to determine if a district court properly excluded proffered testimony. As discussed, the district court properly weighed the concerns of confusion of the issues against the probative value of the testimony, and it did not commit error when it excluded the requested testimony.

## III.

We review "evidentiary rulings regarding the scope of a cross[-]examination for abuse of discretion, but where the Confrontation Clause is implicated, we consider the matter de novo." *United States v. White Plume*, 847 F.3d 624, 629 (8th Cir. 2017) (quoting *United States v. Williams*, 796 F.3d 951, 960 (8th Cir. 2015)).

The Sixth Amendment's Confrontation Clause guarantees a criminal defendant the right "to be confronted with the witnesses against him." *United States v. Brown*, 788 F.3d 830, 833 (8th Cir. 2015). "The primary purpose of this right is to guarantee the opportunity for effective cross-examination, particularly with respect to a witness's potential bias." *Id.* (quoting *United States v. Walley*, 567 F.3d 354, 358 (8th Cir. 2009)). The right to cross-examination, however, is not without limitation. The district courts "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

Clay argues that the district court violated his Sixth Amendment rights by not allowing him to cross-examine Detective Anderson about his observation of closing arguments in the first federal trial and the potential consequences if the shooting of Clay was unjustified. On the first issue, Clay presents a substantively similar

argument as that addressed above. We find that Clay's right to confront Detective Anderson was not violated for the reasons discussed. Simply, evidence that Detective Anderson observed closing arguments was of little probative value, and the district court properly weighed its value against the potential for confusion of the issues.

Turning to the second issue, Clay contends that Detective Anderson's motive to lie about Clay being armed and dangerous arises directly from Detective Anderson's improper use of deadly force and subsequent attempt to avoid punishment. We find that the district court was well within its discretion when it limited cross-examination on this subject. We recently addressed a similar issue in *Williams*, 796 F.3d 951. In that case, the defendant was arrested for being a felon in possession of a firearm after a handgun was found in his possession during a traffic stop. The district court prevented the defendant from cross-examining the officers about their potential motives for planting the handgun on the defendant. We held that "the district court was well within its wide latitude of discretion when it required [the defendant] to first lay a proper evidentiary foundation before implying that [the officers] had planted a handgun on [the defendant] and perjured themselves." *Id.* at 961.

We find that Clay provided only speculation and conjecture in support of his contention that Detective Anderson perjured himself to avoid punishment. We do not agree with Clay that the differences between Detective Anderson's testimony in the first federal trial and the second federal trial provide a foundation for this question. Rather, we agree with the district court that this line of questioning was "distracting from the purpose of the charge and [the] trial." Accordingly, the district court was well within its wide latitude of discretion when it limited cross-examination on this issue.

## IV.

The judgment of the district court is affirmed.

_____