# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-1616
_____

United States of America

*Plaintiff - Appellee*

v.

Donald B. Loomis

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Joplin

_____

Submitted: March 13, 2020
Filed: April 6, 2020

_____

Before GRUENDER, WOLLMAN, and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Donald Loomis appeals the admission of certain evidence at his jury trial, the district court's[1] denial of his motion for a mistrial, and the sufficiency of the evidence supporting his conviction. We affirm.

---

[1]The Honorable Douglas Harpool, United States District Judge for the Western District of Missouri.

A federal grand jury returned an indictment charging Loomis and five other defendants with conspiring to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846. The indictment stated that the conspiracy existed from approximately March 1, 2015 until September 24, 2016.

After the Government presented its case at trial, Loomis's attorney moved for a mistrial based on what Loomis argued was testimony about his potential involvement in other crimes. Loomis's attorney also filed a written motion for judgment of acquittal, arguing the Government failed to prove beyond a reasonable doubt all the elements of the offense. The district court denied both motions. The jury returned a guilty verdict, and the district court sentenced Loomis to 360 months' imprisonment.

Loomis appeals, challenging the admission of certain evidence, the denial of his motion for a mistrial, and the sufficiency of the evidence. We consider each argument in turn.

Loomis argues the district court should not have admitted certain evidence. The parties agree we review the admission of the evidence for plain error because Loomis did not raise his evidentiary arguments before the district court. "To constitute a plain error, a district court's decision must be (1) an error, (2) which is clear or obvious, and (3) which affects substantial rights." *United States v. Thompson*, 289 F.3d 524, 526 (8th Cir. 2002).

First, Loomis argues that the district court plainly erred in admitting evidence of a gun found on codefendant Terrance Romero during a traffic stop and arrest on June 1, 2016. Romero testified that he purchased methamphetamine from Loomis and codefendant Alisha Courtney from February to May 2016. According to Loomis, the evidence should not have been admitted because any partnership Romero had with Loomis "had ended before the stop of [Romero's] vehicle."

Second, Loomis argues that several witnesses testified as experts without proper foundation or notice. Loomis points to Romero's testimony that he had manufactured methamphetamine and his testimony about the precursors needed to manufacture methamphetamine, Drug Enforcement Administration Special Agent Sean Henry's testimony about drug investigations, including the amount of methamphetamine a user would possess compared to the amount a dealer would possess, and Newton County Sheriff Officer Travis Spencer's testimony about methamphetamine manufacturing.

Third, relying on *Griffin v. California*, 380 U.S. 609, 615 (1965), Loomis argues that the district court should not have allowed Henry to testify about Loomis's invocation of his Fifth Amendment right to remain silent. *See id.* (explaining that the Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt"). At trial, Henry described his interview with Loomis: "He started out being cooperative then once we started digging a little deeper into the investigation he kind of just didn't want to talk anymore so we stopped it." Henry clarified, "[H]e has his rights to refuse to talk. We weren't getting anywhere in the investigation." Loomis argues this testimony violated his Fifth Amendment right to remain silent.

Finally, Loomis challenges the admission of evidence regarding methamphetamine seized during his arrest because the Government's notice of evidence under Rule 404(b) of the Federal Rules of Evidence "does not make any mention of the methamphetamine discovered upon his arrest."

We conclude that even if the above evidence was erroneously admitted, the errors did not affect Loomis's substantial rights as required by the plain-error standard because the evidence of his guilt was overwhelming. "The Supreme Court has explained that, in the ordinary case, an error affects the defendant's substantial rights if the defendant shows a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *United States v. Davies*, 942 F.3d 871, 873 (8th Cir. 2019) (internal quotation marks and alteration omitted); *see*

*also United States v. Griffin*, 413 F.3d 806, 807 (8th Cir. 2005) ("Defendant also concedes that the plain error standard applies because he did not raise his constitutional challenge in the district court."); *United States v. Okolo*, 998 F.2d 1011 (4th Cir. 1993) (per curiam) (finding that a jury instruction regarding the defendant's right to remain silent did not affect the defendant's substantial rights).

"To establish that a defendant conspired to distribute drugs under 21 U.S.C. § 846, the government must prove: (1) that there was a conspiracy, i.e., an agreement to distribute the drugs; (2) that the defendant knew of the conspiracy; and (3) that the defendant intentionally joined the conspiracy." *United States v. Saddler*, 538 F.3d 879, 887 (8th Cir. 2008). "Either direct or circumstantial evidence may be used to prove a conspiracy." *United States v. Johnson*, 470 F.3d 1234, 1237 (8th Cir. 2006).

Here, Detective Ed Bailey of the Ozark Drug Enforcement Team testified that a confidential informant provided him with information around April or May 2016 that Loomis was dealing methamphetamine. Bailey then conducted limited surveillance of a residence where Loomis lived with Courtney, and he subsequently arranged a series of controlled buys. An informant purchased about 3.3 grams of methamphetamine at Loomis and Courtney's residence. Several days later, the same informant purchased about 3.5 grams of methamphetamine at the residence. Bailey testified that he later searched the residence and found three baggies of methamphetamine and that after the search, Courtney confessed to dealing almost 150 pounds of methamphetamine in one year and "indicated that she obtained the majority of that methamphetamine from Donald Loomis."

Courtney also testified that she had known Loomis for years and that she saw Loomis with methamphetamine "all the time," including one instance where Loomis had a couple pounds in a Ziploc bag. She also said that Loomis "utilize[d]" her to distribute methamphetamine and that he would compensate her with drugs. From 2015 to 2016, Courtney testified that she and Loomis sold about 120 pounds of

methamphetamine. According to Courtney, she introduced Loomis to Romero, who bought drugs from Courtney.

Romero confirmed that Courtney introduced him to Loomis, and he testified that he purchased one half of an ounce of methamphetamine for $500 from Loomis on one occasion and one half of an ounce of methamphetamine for $400 on a different occasion. He conservatively estimated that he purchased methamphetamine from Courtney fifty different times at the residence where she lived with Loomis. In total, he estimated he received three pounds of methamphetamine from Loomis and Courtney.

Codefendant Katherine Stein testified that Loomis was one of her sources for methamphetamine. At first she bought 3.5 grams from him, but that amount increased to about one half of an ounce of methamphetamine every other week. Stein said her relationship with Loomis ended after they argued about whether she owed him $600 for methamphetamine.

Law enforcement officers also testified that, when stopped on several occasions, Loomis was carrying large quantities of money: $6,000 on one occasion, $4,000 on another, and $8,494 on still another. According to Stein, Loomis did not have a job during the time she knew him. Courtney also testified that Loomis was not employed during the time he lived with her.

This evidence is more than sufficient to show that any error in admitting the evidence Loomis challenges on appeal did not affect his substantial rights because, even without the challenged evidence, there is not a reasonable probability that a jury would have acquitted Loomis. Loomis argues that we should discount certain testimony because it was not credible, but "credibility determinations are left to the jury." *United States v. Wallace*, 713 F.3d 422, 428 (8th Cir. 2013). We thus reject Loomis's evidentiary arguments.

Next, Loomis argues the district court abused its discretion in denying his motion for a mistrial based on Spencer's testimony about Loomis's potential involvement in a shooting and a burglary and Henry's testimony about money laundering. "The denial of a motion for mistrial is reviewed for an abuse of discretion." *United States v. Thompson*, 533 F.3d 964, 971 (8th Cir. 2008). In reviewing whether the district court abused its discretion, "the prejudicial effect of any improper testimony is determined by examining the context of the error and the strength of the evidence of the defendant's guilt." *Id*. (alteration omitted).

Spencer testified that when he interviewed Loomis, Loomis stated that he was not involved in a shooting or burglary at Bykota Trailer Park. After a sidebar, the district court subsequently instructed the jury to "disregard the testimony of [Spencer] as it related to any reference to a shooting or burglary." Assuming Spencer's testimony was improper, we conclude that "the district court's curative instruction sufficiently cured any prejudice caused by [Spencer's] improper testimony." *United States v. Ybarra*, 700 F. App'x 543, 545 (8th Cir. 2017) (per curiam); *see also United States v. Sherman*, 440 F.3d 982, 988 (8th Cir. 2006) ("Here, the evidence of the defendant's guilt was substantial, and the district court acted promptly to strike the allegedly improper testimony and to instruct the jury to disregard it.").

Henry testified that "[a] lot of times drug dealers don't use player's cards [when gambling] because it's traceable." Loomis argues this testimony was improper and unfairly prejudicial because he says the testimony relates to money laundering, and "[t]his case did not involve money laundering." But both Stein and Courtney testified that Loomis did not have a job, so a reasonable juror could infer that Henry's testimony indicated that Loomis was making his money through a drug conspiracy and spending it while gambling.

Even assuming this testimony was improper, "[w]hen the evidence of guilt is substantial," as previously detailed, "we may find that the allegedly improper testimony was harmless." *United States v. Brandon*, 521 F.3d 1019, 1026 (8th Cir.

-6-

2008). We thus conclude, as above, that even if Henry's and Spencer's testimony was erroneously admitted, the error was harmless. The district court did not abuse its discretion in denying the motion for a mistrial.

Finally, Loomis argues the evidence was insufficient to support his conviction. "We review *de novo* the sufficiency of the evidence, viewing the evidence in the light most favorable to the verdict and upholding it if, based on all the evidence and all reasonable inferences in favor of the verdict, any reasonable juror could find the defendant guilty beyond a reasonable doubt." *United States v. Hill*, 410 F.3d 468, 471 (8th Cir. 2005). For the reasons explained above, Loomis's argument fails because the evidence of his guilt was overwhelming.

Accordingly, we affirm.

_____