# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-2677

_____

United States of America,

*Plaintiff - Appellee*,

v.

Stacy A. Lyman,

*Defendant - Appellant*.

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: November 20, 2020
Filed: March 25, 2021

_____

Before COLLOTON, MELLOY, and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

In 2018, Stacy Lyman pleaded guilty to conspiring to distribute methamphetamine and unlawful possession of a firearm as a previously convicted

felon. *See* 21 U.S.C. § 846; 18 U.S.C. § 922(g)(1). The district court[1] concluded that Lyman was subject to an enhanced sentence for the firearm conviction under the Armed Career Criminal Act (ACCA) because he had sustained at least three prior convictions for a "serious drug offense." *See* 18 U.S.C. § 924(e)(1), (e)(2)(A)(ii). As a result, Lyman's statutory penalty on the firearm conviction changed from a maximum sentence of ten years to a mandatory minimum sentence of fifteen years (and a maximum of life) under the ACCA. *See id*. § 924(a)(2), (e)(1). The court imposed concurrent terms of 205 months' imprisonment on each count. Lyman appeals the sentence on the ground that he did not have three qualifying convictions under the ACCA.

The prior convictions at issue arose from charges that Lyman sold drugs in Missouri on three occasions in 1996. State prosecutors charged Lyman with violating a Missouri statute that made it "unlawful for any person to distribute, deliver, manufacture, [or] produce . . . a controlled substance." Mo. Rev. Stat. § 195.211.1 (1994) (current version at Mo. Rev. Stat. § 579.055). On October 6, 1997, Lyman pleaded guilty to three counts.

Lyman first mounts a collateral attack on the Missouri convictions. He asserts that the drug trafficking statute in Missouri included a *mens rea* requirement of knowledge, but the charging documents incorrectly alleged that he acted with either knowledge or recklessness. Lyman therefore posits that he might have been convicted based on recklessness alone, which in his view would make the convictions invalid.

Whatever *mens rea* element was required by state law or applied in the state court proceedings, Lyman cannot attack his prior convictions on that ground in this

---

[1]The Honorable Greg Kays, United States District Judge for the Western District of Missouri.

federal proceeding. With the exception of convictions obtained in violation of the right to counsel, a defendant has no right "to collaterally attack prior convictions" in the course of his federal sentencing proceeding. *Custis v. United States*, 511 U.S. 485, 487 (1994). Lyman acknowledges that he was represented by counsel in the state proceedings, so his first contention is foreclosed by *Custis*.

Lyman's second assertion on appeal is that the prior state convictions do not qualify as predicate offenses under the ACCA. He contends that a state drug trafficking offense qualifies as a "serious drug offense" under § 924(e)(2)(A)(ii) only if knowledge (as opposed to recklessness) was an essential element of the state offense. Lyman did not raise this argument in the district court, so we review for plain error. *See* Fed. R. Crim. P. 52(b). To obtain relief, Lyman must show an obvious error that affected his substantial rights and seriously affected the fairness, integrity, or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732-35 (1993).

Lyman's theory is premised on a belief that he was convicted in 1997 based on a showing of mere recklessness, because the charging documents alleged that he sold drugs, knowing or consciously disregarding a substantial and unjustifiable risk that the drugs were a controlled substance. Missouri law was murky on the question of what mental state was required for a violation at the time of Lyman's offenses. The drug trafficking statutes did not include an express *mens rea* element. Until 1993, Missouri's "General Principles of Liability" provided that a culpable mental state was established if the person acted "purposely or knowingly or recklessly." Mo. Rev. Stat. § 562.021.2 (1986). But this default *mens rea* provision was deleted in 1993, *see* Act of June 30, 1993, ch. 562, 1993 Mo. Laws 1554, 1560, and there was no substitute provision in effect in 1996. As a result, the requisite mental state was unclear. *See State v. Carson*, 941 S.W.2d 518, 522 (Mo. 1997) ("By its repeal of § 562.021.2, the General Assembly has made the required culpable mental state unclear for many crimes within the Criminal Code, and it should promptly address

-3-

this confusion."). The General Assembly thereafter changed the default mental state to "purposely or knowingly" before Lyman pleaded guilty in October 1997. Act of July 10, 1997, ch. 562, 1997 Mo. Laws 643, 648 (codified as amended at Mo. Rev. Stat. § 562.021.3 (1997) (effective Aug. 28, 1997)).

Even assuming for the sake of analysis that Lyman's offenses of conviction required only a mental state of recklessness, the district court did not plainly err by counting them as serious drug offenses under the ACCA. Any error in this respect would not be "clear" or "obvious." The federal statute does not by its terms limit a "serious drug offense" to an offense with a *mens rea* of purpose or knowledge. A state offense qualifies if it is one "involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance." 18 U.S.C. § 924(e)(2)(A)(ii). At least one circuit, therefore, has held that "[n]o element of *mens rea* with respect to the illicit nature of the controlled substance is expressed or implied." *United States v. Smith*, 775 F.3d 1262, 1267 (11th Cir. 2014). The Supreme Court identified the same issue in *Shular v. United States*, 140 S. Ct. 779 (2020), but declined to address it. *Id*. at 787 n.3. Given the absence of a *mens rea* requirement in the federal definition of "serious drug offense," the holding of *Smith* that no *mens rea* element is implied, and the absence of guidance from the Supreme Court in *Shular*, the district court did not commit plain error by ruling that Lyman's convictions in Missouri were qualifying predicate offenses.

The judgment of the district court is affirmed. The government's motion to dismiss the appeal based on an appeal waiver in Lyman's plea agreement is denied as moot.

_____