# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 21-2541

———————————————

United States of America

*Plaintiff - Appellee*

v.

Anthony Wayne Hall

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the District of Nebraska

——————————

Submitted: April 11, 2022
Filed: August 11, 2022

——————————

Before SMITH, Chief Judge, WOLLMAN and GRASZ, Circuit Judges.

——————————

GRASZ, Circuit Judge.

A jury convicted Anthony Hall of aggravated bank robbery, and the district court[1] sentenced him to mandatory life imprisonment under the federal "three strikes" law. Hall appeals his conviction and sentence. We affirm.

———————————————

[1]The Honorable Robert F. Rossiter, Jr., then United States District Judge, now Chief Judge, for the District of Nebraska.

# I. Background

On a November afternoon, an unmasked man robbed at gunpoint a bank in Fremont, Nebraska. The robber stole over $10,000, including several bait bills whose serial numbers had been logged by the bank. Surveillance cameras captured the crime. Once he obtained the money, the robber used death threats to force a bank employee to escort him to his blue sports car a few blocks away. The robber eventually let the employee go before he fled away.

Law enforcement quickly suspected Anthony Hall committed the robbery for multiple reasons. First, the escorting bank employee identified Hall as the robber in a photographic lineup. Second, multiple community members identified Hall as the robber in surveillance footage photographs. Third, Hall never returned to his job or the hotel where he was temporarily living after the robbery. Fourth, law enforcement found a BB gun—which looked like the gun used in the robbery—and purchase documents for a blue sports car in Hall's hotel room on the night of the robbery.

The day after the robbery, Hall fled from a traffic stop in his blue sports car in St. Joseph, Missouri. He ultimately crashed the car but abandoned it before police arrived. Hall then bought another car in St. Joseph. But eight days after the first crash, he crashed and abandoned the second car after fleeing another routine traffic stop[2] in Andrew County, Missouri. In the second abandoned car, police found a "BB gun," a bill of sale for the car with Hall's name, and a cell phone with GPS directions to Florida. And less than 100 yards away, they also found a BB gun on the ground and a duffel bag with another BB gun, knives, zip ties, and duct tape.

The next day, Hall (injured and wearing a jacket consistent with the one worn by the bank robber) turned himself in to police as the fleeing driver from the night before. Law enforcement promptly arrested Hall, requested an ambulance to

---

[2]Law enforcement initiated this stop for registration, lane, and license plate violations.

respond to the scene, and seized over $700 from his wallet—including five bills that matched bait bills stolen in the robbery. When an FBI agent visited Hall at the hospital and told Hall about the robbery charges, Hall told the agent "[s]omething to the effect of 'You got me. I flipped out.'"

A grand jury indicted Hall for aggravated bank robbery under 18 U.S.C. § 2113(a) and (e). At trial, the district court admitted evidence of Hall's flight from two traffic stops in Missouri as circumstantial evidence of Hall's consciousness of guilt concerning the robbery. The jury ultimately convicted Hall. The district court then sentenced Hall to life imprisonment under the federal three strikes law, which mandates life imprisonment for individuals who commit a "serious violent felony" if they had at least two prior serious violent felony convictions on separate occasions. *See* 18 U.S.C. § 3559(c)(1)(A)(i). Had the three strikes law not applied, Hall faced a maximum sentence of twenty years of imprisonment. *See* 18 U.S.C. § 2113(a). Hall appeals his conviction and sentence on multiple grounds.

## II. Analysis

Hall argues (A) the district court erroneously admitted evidence of his flight from the second traffic stop; (B) the jury's verdict lacked sufficient evidence; and (C) the three strikes law is unconstitutional. We address each argument in turn.

### A. Evidentiary Ruling

Hall argues the district court erred in concluding the probative value of Hall's flight from the second traffic stop was not substantially outweighed by the danger of unfair prejudice. We disagree. Federal Rule of Evidence 403 permits a district court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." "We accord great deference to the district court's application of the Rule 403 balancing test and will reverse only for a clear abuse of discretion." *United States v. Medrano*, 925 F.3d 993, 996 (8th Cir. 2019) (quoting *United States v. Kime*, 99 F.3d 870, 878 (8th Cir. 1996)).

-3-

Evidence of one's flight from law enforcement may have "probative value as circumstantial evidence of consciousness of guilt." *United States v. Howard*, 977 F.3d 671, 676 (8th Cir. 2020) (quoting *United States v. Thompson*, 690 F.3d 977, 991 (8th Cir. 2012)), *cert. denied*, 142 S. Ct. 123 (2021). The probative value of flight evidence depends on "whether the evidence supports the following four inferences: that the defendant fled; that the flight evinced consciousness of guilt; that the guilt related to the crime charged in this case; and that the consciousness of guilt flowed from actual guilt of the crime charged." *United States v. Chipps*, 410 F.3d 438, 449–50 (8th Cir. 2005).

Here, while law enforcement initiated the second stop for traffic violations, a jury could reasonably infer that Hall fled the attempted stop because of a guilty conscience concerning the robbery for several reasons. First, Hall had abandoned his job and home only nine days earlier, leaving many belongings behind. He then fled from the first traffic stop the day after the robbery, crashing that car and running away. And in his second flight, he crashed a newly purchased car and again ran away. These extreme and evasive actions are atypical for one faced with routine traffic violations. Instead, Hall's flight from the second traffic stop, coupled with the collective details of his sudden exodus from town after the commission of the robbery, support an inference of a guilty consciousness flowing from the robbery.[3]

The district court did not clearly abuse its discretion in concluding any danger of unfair prejudice did not substantially outweigh the evidence's probative value. "Unfair prejudice means an undue tendency to suggest decision on an improper basis." *United States v. Huyck*, 849 F.3d 432, 440 (8th Cir. 2017) (quoting *United*

---

[3]Because of the close factual connection and temporal proximity between Hall's flight from the second traffic stop and the robbery, this case is distinct from *United States v. White*, 488 F.2d 660, 662 (8th Cir. 1973), where we held evidence of a defendant's flight from law enforcement was erroneously admitted when an attempted arrest occurred "over five months" after the underlying crime and there was "no indication" the defendant knew he was being sought for the crime charged when law enforcement tried to stop him.

*States v. Betcher*, 534 F.3d 820, 825 (8th Cir. 2008)). While "evidence of flight carries a risk of prejudice," it may provide the "information necessary for the narrative of the government's case." *United States v. Johnson*, 535 F.3d 892, 895–96 (8th Cir. 2008). Here, evidence of Hall's flight from the second traffic stop helped establish the government's narrative that Hall continually evaded police for ten days following the robbery. It also helped the jury understand why the police found Hall, as well as incriminating evidence, in another state.

To be sure, "district courts should be wary of the amount of evidence permitted on this subject and the way in which it is presented." *Id.* at 896 (quoting *United States v. Hankins*, 931 F.2d 1256, 1262 (8th Cir. 1991)). There is no indication here, however, that the government presented excessive evidence about Hall's flight or did so inflammatorily. The district court also instructed the jury that innocent reasons could justify Hall's flight, decreasing the risk of unfair prejudice. *See United States v. Littlewind*, 595 F.3d 876, 881 (8th Cir. 2010) ("[L]imiting instructions minimize the danger of unfair prejudice."). We thus conclude the district court did not clearly abuse its discretion in conducting the Rule 403 balancing test.

### B. Sufficiency of the Evidence

Hall argues the jury's verdict lacked sufficient evidence. We disagree. We review the sufficiency of the evidence de novo. *United States v. Loomis*, 954 F.3d 1184, 1189 (8th Cir. 2020). We affirm the conviction if, viewing the evidence in the light most favorable to the government, "any reasonable jury could have found the elements of the crime beyond a reasonable doubt." *United States v. Warren*, 951 F.3d 946, 949 (8th Cir. 2020) (quoting *United States v. Vinton*, 429 F.3d 811, 815 (8th Cir. 2005)), *cert. denied*, 141 S. Ct. 2805 (2021).

Hall's sole argument on appeal is that he was mistakenly identified as the robber. But overwhelming evidence indicates his identification was not a mistake. The bank employee who accompanied the robber to the getaway car identified Hall

as the robber in a photographic lineup. Multiple community tips identified Hall as the robber from surveillance footage. Hall's car matched the description of the one used by the robber. Law enforcement found a BB gun that looked similar to the gun used in the robbery in Hall's hotel room. Hall suspiciously fled his job and home the day of the robbery. He then fled two routine traffic stops in another state while driving with GPS directions to Florida. Law enforcement found suspicious items in and near Hall's second wrecked car. When he was arrested, Hall possessed five bait bills matching those stolen from the bank and wore a jacket like the one worn by the robber. He told the FBI agent something like "You got me" and "I flipped out" when asked about the robbery. This evidence overwhelmingly shows the jury reasonably identified Hall as the robber.

## C. Constitutional Claims

Hall argues the three strikes law, 18 U.S.C. § 3559(c)(1)(A)(i), violates several constitutional provisions. We review constitutional arguments de novo. *United States v. Clay*, 883 F.3d 1056, 1060 (8th Cir. 2018).

Hall initially asserts the three strikes law, both facially and as applied to him, violates substantive due process under the Fifth Amendment. We first turn to Hall's facial challenge, in which he "must establish that no set of circumstances exists under which the [law] would be valid." *Barrett v. Claycomb*, 705 F.3d 315, 321 (8th Cir. 2013) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). We hold Hall does not meet his burden here. The Fifth Amendment bars the federal government from depriving a person of "liberty . . . without due process of law." "We review acts of Congress with considerable deference," and a federal statute satisfies Fifth Amendment substantive due process if it bears a "reasonable relation to a proper legislative purpose" and is "neither arbitrary nor discriminatory." *United States v. Buckner*, 894 F.2d 975, 978 (8th Cir. 1990) (second and third quote from *Nebbia v. New York*, 291 U.S. 502, 537 (1934)). We conclude the three strikes law, considered facially, is rational and reasonably related to the proper legislative purpose of public safety by incapacitating and deterring recidivist felons. *See Ewing*

*v. California*, 538 U.S. 11, 29 (2003) (recognizing the government's "public-safety interest in incapacitating and deterring recidivist felons").

While Hall does not argue the law is discriminatory, he argues the law's equal consideration of decades-old serious violent felonies with more recent ones is facially arbitrary. We disagree. It is not facially arbitrary to conclude that a defendant who commits a third serious violent felony after committing two prior serious violent felonies, even if the two prior convictions occurred decades before, has shown a persistent disregard for the law and public safety. Given serious violent felony convictions generally carry lengthy sentences of imprisonment, it is no surprise when such convictions for a defendant are decades old. Congress's imposition of a mandatory life sentence for such repeat criminals was within its realm of discretion. *See United States v. Farmer*, 73 F.3d 836, 840 (8th Cir. 1996) ("Congress has power to make sentences mandatory and to withdraw all sentencing discretion from the courts, except in capital cases."). We thus reject Hall's facial challenge to the three strikes law.[4]

Hall's as-applied challenge[5] fares no better. While Hall's prior convictions occurred decades ago, he has spent most of the intervening time imprisoned. And Hall's lack of convictions while imprisoned does not, by itself, evince a lower propensity to recidivate. After being imprisoned almost thirteen years for a gruesome second-degree murder (in which he stabbed a fifteen-year-old victim fifty-six times) and a rape he committed in 1973, he then committed at least seven armed robberies within a few months of his first release in 1986. And after serving over

---

[4]Our conclusion aligns with at least two other circuits that already rejected substantive due process challenges to the three strikes law. *See United States v. Bredy*, 209 F.3d 1193, 1198 (10th Cir. 2000); *United States v. Boone*, 155 F.3d 561, No. 97-4094, 1998 WL 398782, at *2 (4th Cir. 1998) (unpublished table decision).

[5]"An as-applied challenge consists of a challenge to the statute's application only as-applied to the party before the court." *Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 700 (8th Cir. 2021) (quoting *Republican Party of Minn. v. Klobuchar*, 381 F.3d 785, 790 (8th Cir. 2004)).

thirty years for the seven robberies until 2017, he then committed this crime in 2019. Congress acted rationally and not arbitrarily in ensuring such persistent criminals are guaranteed life imprisonment.

Hall next avers the three strikes law violates procedural due process under the Fifth Amendment because the law did not allow him to challenge the validity of his prior convictions at sentencing. We disagree. Except for "convictions obtained in violation of the right to counsel, a defendant has no right 'to collaterally attack prior convictions' in the course of his federal sentencing proceeding." *United States v. Lyman*, 991 F.3d 994, 996 (8th Cir. 2021) (quoting *Custis v. United States*, 511 U.S. 485, 487 (1994)). Because Hall does not assert any prior violations of the right to counsel, his argument fails.

Hall also asserts the three strikes law violates the Sixth Amendment because the judge, rather than jury, determined whether his offenses were serious violent felonies. We have already held judicial determinations of this sort do not violate the Sixth Amendment. *See United States v. House*, 825 F.3d 381, 388 (8th Cir. 2016). And we are bound by the prior panel's decision. *See United States v. Boykin*, 794 F.3d 939, 948 (8th Cir. 2015).

Hall last asserts the three strikes law's imposition of a mandatory life sentence violates the Eighth Amendment's prohibition on "cruel and unusual punishments" as applied to him. We disagree. We previously rejected this same as-applied argument by another defendant, *see Farmer*, 73 F.3d at 840, and find no reason to depart from that conclusion here. Eighth Amendment violations for noncapital sentences are "exceedingly rare" and occur when "a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *United States v. Garth*, 929 F.3d 967, 969 (8th Cir. 2019) (quoting *United States v. Paton*, 535 F.3d 829, 837 (8th Cir. 2008) (first quote) and *United States v. James*, 564 F.3d 960, 964 (8th Cir. 2009) (second quote)). In assessing the weight of Hall's crime, we "place on the scales not only [Hall's] current felony, but also his long history of felony recidivism." *Ewing*, 538 U.S. at 29. That

in mind, this is not one of those exceedingly rare cases that violates the Eighth Amendment.  Hall robbed a bank at gunpoint, used death threats to force a bank employee to escort him outside, and then fled across state lines for about ten days while twice fleeing law enforcement traffic stops.  Based on Hall's criminal history outlined earlier, he has proven he remains a danger to the public despite being given a second and third chance to show otherwise.  The sentence imposed here was not grossly disproportionate to Hall's crime.

## III. Conclusion

None of Hall's arguments on appeal are persuasive.  We affirm the district court's judgment.

_____